**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Appellant.**

v.

**M. Patricia BRESLIN, Appellee.**

**No. 20524.**

United States Court of Appeals
Fifth Circuit.
June 4, 1964.

J. Thomas Gurney, Jr., and Edward L. Stahley, of Gurney, Gurney & Handley Orlando, Fla., for appellant.

William H. Corbley, Allen K. McCormick, Orlando, Fla., for appellee.

Before MAGRUDER,* JONES and GEWIN, Circuit Judges.

* Senior Circuit Judge of the First Circuit, sitting by designation.

JONES, Circuit Judge:

T. J. Breslin was insured under a group life insurance policy which provided for the payment to his wife, M. Patricia Breslin, the appellee here, of $20,-000 upon his death, and an additional payment of the same amount if his death resulted from bodily injuries "effected directly and independently of all other causes through external, violent and accidental means. * * *" The insured met his death on February 25, 1962, as the result of being stabbed with a knife in the hand of Mrs. Breslin's father, John J. Lynch. The appellant paid the amount of the basic insurance coverage. Mrs. Breslin brought suit in a Florida court for the accidental death benefit. On June 26, 1962, the appellant filed its petition for removal to the United States District Court on the ground of diversity of citizenship. On the same day the appellant filed an answer which, among other things, denied the allegation of the complaint that the insured died as a result of "bodily injuries effected directly and independently of all other causes through external, violent and accidental means. * * *" On August 17, 1962, the appellant asked for leave to file an amended answer which added an additional allegation that the death of the insured was not effected by accidental means under the terms of the policy, a copy of which was attached, but "was effected by causes reasonably foreseeable on the part of" the insured. The amended answer asked for a trial by jury. The court allowed the amendment except that portion demanding a jury trial. The original answer contained no such demand.

On October 11, 1962, the parties stipulated that the only fact issue to be tried was whether the insured died as a result of injuries effected by external, violent and accidental means within the policy provisions. On the same day, the appellant moved for a continuance on the ground that John J. Lynch, who was a vital witness, was in the hospital and would be unable to attend the trial, that his deposition had been taken for discovery but it did not fully cover the fac-

tual situation. No order was entered on the motion but the trial was delayed. A further deposition of Lynch was taken by the appellant on October 16, 1962, while he was in a hospital. The case was called for trial before the court without a jury. Each of the parties answered "Ready."

The appellee, as plaintiff, was the only witness on her own behalf. The appellant, as defendant, produced one witness who testified that, some weeks before the fatal event occurred, Lynch had directed to Breslin a threat that "I will fix your feet." and another witness who testified as to the amount of light in the hallway where the occurrence took place. The only other evidence for the appellant was the two depositions of Lynch. The trial court made the following findings:

"The insured, T. J. Breslin, died on February 25, 1962, as a result of a stab wound inflicted on the same date.

"At the time of his death, T. J. Breslin, the insured, and his wife, the Plaintiff, had been separated but he came to the Plaintiff's home at times for the purpose of visiting their minor children. The insured came to Plaintiff's home Sunday, February 25, 1962, to take the children for a ride. While at the home he brought up the subject of a marital reconciliation and physically abused the Plaintiff on her refusal. The Plaintiff was crying when her father arrived at the home. He went into the house and inquired as to what had happened and received no answer. Plaintiff went into the kitchen followed by the insured who apologized to her for mistreating her. Her father, John Lynch, then followed the couple into the kitchen. An altercation occurred between John Lynch and the insured after which the insured left the home.

"The plaintiff then went into the bathroom to wash her face and her father remained in the kitchen. Shortly thereafter the insured re-

turned to the house, passed the kitchen door and proceeded down the darkened or partly lighted hallway to the bathroom wherein Plaintiff was standing. He requested her to get the other child, who was asleep in her room, and accompany him and the two older children. She refused.

"When the insured passed the kitchen doorway on his way down to the bathroom, John Lynch picked up a carving knife for his own protection and walked toward the bathroom doorway in the hall where the insured was standing. John Lynch is the only living person who witnessed what happened in the hallway when the insured received the wound which caused his death. John Lynch's testimony, which was presented by the Defendant in deposition form because the witness was too ill to attend the trial, described the incident as follows:

" 'This is when he turned around and came toward me. But what he was going to do, I don't know. I didn't know what he was going to do. Maybe he was going to shove me out of the way and get out. I don't know; but that is when the accident happened . . . it was during that time that the accident happened. I couldn't believe it. I was so surprised when he backed over, and I kind of heard him say, "Oh, I am cut." didn't cut him. I don't know how it happened. I couldn't tell you. All I did was holding that knife to keep him at arm's length; at least to keep him off me, and I never felt nothing. My arm never moved, none at all, in any direction." '

"John Lynch did not willfully attack the insured nor did he intentionally stab him. The facts and circumstances surrounding the situation when the insured received his death wound as they appear from the foregoing testimony offered by the defendant are just as consistent with the Plaintiff's theory of accidental death as they are with the Defendant's claim that the death was a result of an altercation and therefore, I find from all of the evidence presented that the death of the insured, T. J. Breslin, resulted from bodily injury effected directly and independently of all other causes through external, violent and accidental means, and that said death resulted independently and exclusively of all other causes, as defined in the insurance policy."

The court concluded that the "death of the insured, T. J. Breslin, resulted from bodily injuries effected directly and independently of all other causes through external, violent and accidental means, * * *." The court awarded judgment against the appellant for $20,000, for attorneys' fees in the amount of $7,500, and for costs. On appeal it is asserted that the motion for continuance should have been granted, and that the amendment to the answer demanding a jury trial should have been allowed. The appellant challenges the findings and conclusions that the insured's death resulted from accidental means within the terms and provisions of the policy.

 The original answer of the appellant, which did not contain a demand for a jury trial, contained a denial of the allegations of the appellee's complaint that the insured died as a result of accidental means within the policy coverage. The amended answer, which contained a demand for a jury trial, was different from the original answer only by the addition of an affirmative allegation that the death of the insured was not effected through accidental means within the policy provisions, and that death was effected by causes reasonably foreseeable on the part of the insured. The amended answer did not raise any issues which were in any material way different from those presented by the original answer. In such a case the waiver originally made remains effective and the subsequent demand is ineffective. The appellant could have, but did not, apply for a trial by jury under Rule 39(b). Fed.Rules Civ.

Proc. 28 U.S.C.A., rather than asserting a right that had been waived under Rule 38. Roth v. Hyer, 5th Cir. 1944, 142 F.2d 227, cert. den. 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573. There was no error in striking the belated jury demand from the amended answer.

■■ It is clear that there was no error in denying the requested continuance. The continuance was sought because the witness Lynch could not attend trial. It was not urged in the motions for continuance, nor in the supporting affidavit of counsel, that it would be necessary or even desirable that the demeanor of the witness be observed by the trial judge. When the case was called and the appellant answered "Ready" there was nothing said or done to indicate that the appellant was not satisfied with the testimony of Lynch as it appeared in his depositions. The granting or refusal of a motion for a continuance rests within the sound judicial discretion of the trial court and its ruling on such a motion will not be disturbed on appeal unless an abuse of discretion is shown. Peckham v. Family Loan Company, 5th Cir. 1959, 262 F.2d 422, cert. den. 361 U.S. 824, 80 S.Ct. 70, 4 L.Ed.2d 68. It does not appear that there was any abuse of discretion in the refusal of the district court to continue the case.

■ The other specifications of error go to the question of whether the district court committed reversible error in finding that the death of the insured was effected by accidental means within the terms of the policy. The master policy was a contract with Breslin's employer, The Martin Company. The master policy was not, it seems, in evidence. It is not before us. We do not know where it was delivered or whether it contained any provisions as to the law to be applied in its construction. See Boseman v. Connecticut General Life Insurance Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732, affirming Connecticut General Life Insurance Co. v. Boseman, 5th Cir., 1936, 84 F.2d 701. The case was tried and is here argued on the assumption that the law of Florida governs.

Since it was there that the insured's death occurred and the action was brought and decided, we likewise indulge in the assumption. Hence we undertake to make as nearly an enlightened guess as the illumination of the Florida precedents permits as to the controlling principles of the law of that jurisdiction.

It is to be noted that the policy does not contain, as it might have, a clause excluding liability if death resulted from the intentional acts of others, as in Butler v. Peninsular Life Insurance Co., Fla.App., 115 So.2d 608; Golden v. Independent Life & Accident Insurance Co., Fla., 77 So.2d 841; and Order of United Commercial Travelers v. Singeltary, 111 Fla. 248, 149 So. 480; nor does it contain any clause excluding liability for death resulting from the commission of an assault, as in Powell v. New York Life Insurance Co., Fla.App., 120 So.2d 33.

■■ This Court, twenty-odd years ago, in deciding a diversity case having its origin in Florida, had occasion to say:

"To entitle this beneficiary to the double indemnity, the injuries resulting in death must have been unexpected, received by chance, and not in accordance with the usual course of things. An effect that is the natural and probable consequence of a voluntary act is not produced by accidental means. Upon these principles the rule has been established that, when one who is the aggressor in an altercation from which a fatal injury reasonably might or should be expected to result is killed, the death is not to be considered accidental." Mullaney v. Prudential Insurance Co., 5th Cir. 1942, 125 F.2d 900.

Under the rule thus stated, the insurance company can go free only if the insured's death was reasonably foreseeable by him as well as a natural consequence of his wrongful act of assault. These are fact questions and are the subject matter of proof.

■ The appellant asserts that the appellee failed to meet her burden of

proof and that the trial court erred in its interpretation of the burden of proof. This contention stems from the district court's statement in its findings that "The facts and circumstances surrounding the situation when the insured received his death wound, as they appear from the foregoing testimony [of Lynch as quoted in findings, supra] offered by the defendant are just as consistent with plaintiff's theory of accidental death as they are with the defendant's claim that the death was the result of an altercation. * * *" On this statement the appellant bases its claim that the court had erroneously held that the appellee had the burden of proving that the insured's death was the result of an altercation and that it had failed to carry that burden. Questions as to burden of proof in diversity cases are governed by state law. 1 Moore's Federal Practice 3505 et seq., Par. 0.314[2].

■■■ There is a presumption that one who dies from a knife wound has met death by accidental means. 29 A.Am. Jur. 914, Insurance § 1852. It was stipulated that the insured's death was caused by being stabbed. This made a *prima facie* case for the appellee and, although strictly speaking there was no shifting of the burden of proof, the appellant had the duty of going forward with evidence to show that death was not accidental. This rule, followed in Florida, has been stated in this way:

> "In an action upon an insurance policy the plaintiff must establish a prima facie case bringing himself within the terms of the contract. Cf. Anderson v. New York Life Ins. Co., 140 Fla. 198, 191 So. 307. The burden then shifts to the defendant to go forward with the evidence." Kimbro v. Metropolitan Life Insurance Co., Fla.App., 112 So.2d 274, 277. See Leonetti v. Boone, Fla., 74 So.2d 551; Mason v. Life & Casualty Insurance Co. of Tenn., Fla., 41 So.2d 153; 13 Fla.Jur. 67, Evidence § 59.

Assuming that the aggressor-foreseeability doctrine, as stated in Mullaney, is the law of Florida, the burden rested upon the appellant of producing evidence to show that the insured met his death from injuries received while acting as the aggressor in making an assault under circumstances where he should have foreseen that a fatal result might ensue.

■■■ A corollary of the rule of foreseeability of injury or death by the aggressor in an altercation is that where the insured's injury or death occurs after there has been an abandonment or withdrawal from the altercation, the insurer may be found liable. 29 A.Am.Jur. 337, Insurance § 1193. It may well be that the evidence here might warrant findings that the original altercation, if such there was, had terminated; that the insured, after leaving the house, had returned to ask his wife, the appellee, and the youngest of the three children, to go for a ride with him; that she had refused, and then, as the witness Lynch testified, "This is when he * * * came toward me." So also might it have been found that the insured had no other means of leaving the house except through the narrow hallway where Lynch, knife in hand, was standing and that as Lynch suggested as a possibility, "he was going to shove me out of the way and get out." The evidence might have sustained a finding that the incident was, as Lynch referred to it, an "accident." But such findings were not made.

■■■ So also, we think, it might have been found, that there was an altercation which had not terminated or had been renewed and in which the insured was the aggressor. But such finding was not made. The ultimate finding of the district court was that insured's death was caused by accidental means, but this finding was predicated upon the testimony being as consistent with accidental death as with death resulting from an altercation. Thus it would seem that the court, having found that the fatal injury was not intentionally inflicted, concluded that the plaintiff should recover because it had not been demonstrated that death resulted from an altercation. This put upon the insurer the

burden of proving that the insured's death was the result of an altercation in which he was an aggressor who should have foreseen injury or death. The law casts no such burden upon the insurer. One who seeks recovery upon a policy insuring against death by accident has the burden of showing liability under the policy by a preponderance of the evidence. The most that can flow from the presumption that death from a stab wound is accidental is to call for the insurer to go forward with evidence to refute the presumption. There is no shifting of the burden of proof. Southern Life and Health Insurance Co. v. Medley, Fla.App., 161 So.2d 19. If the insurer presents sufficient evidence of aggression on the part of the insured so that all the evidence taken together is as consistent with the hypothesis of aggression as it is with the hypothesis of accident, neither is proved, and the insured or his beneficiary, having the burden of proof, must fail. Mutual Life Insurance Co. v. Hess, 5th Cir. 1947, 161 F.2d 1. Feeling that the district court misconstrued the rule as to burden of proof with the result that inconclusive findings and conclusions were made, the judgment will be vacated and the cause remanded to the district court for further consideration and for such findings, conclusions and judgment as may be proper in view of what has been here said.

The case was tried in the district court upon the assumption that the death of an aggressor in an altercation is not caused by accidental means where a fatal injury might or should be expected. We have discussed the case and reached a conclusion upon the same assumption. But it is urged that this rule is not the law of Florida, and that this Court was in error in Mullaney, as it had been before and will be again, in the making of what it hoped was an enlightened guess as to the law of Florida. In 1957 the Supreme Court of Florida decided the case of Gulf Life Insurance Co. v. Nash, Fla., 97 So. 2d 4. There an insured, at a party, pointed a pistol at his chest, pulled the trigger three times, the gun discharged and the

insured was killed. The insured mistakenly believed that he could snap the trigger three times without the hammer falling on the shell. The Supreme Court of Florida affirmed a holding that the death was accidental. In its decision the court rejected any distinction between accidental or accidental result and accidental means. Approval was given of the dissenting opinion of Mr. Justice Cardozo in Landress v. Phoenix Mutual Life Insurance Co., 291 U.S. 491, 498, 54 S.Ct. 461, 463, 78 L.Ed. 934, 937, 90 A.L.R. 1382. In its opinion the Court said, "Having thus determined that the insured did not commit suicide and there being no contention that his death resulted from natural causes, it inevitably follows that his death was accidental." As to the doctrine of foreseeability, which is the doctrine of Mullaney, Mr. Justice Drew, writing for the majority of the Florida court, referred to the decisions adhering to the doctrine and made this pronouncement,

"It seems to me that such doctrine of foreseeability is a doctrine totally unsuited and unadaptable in construing accident policies. Moreover, the rationale of these cases seems to be founded not only in the doctrine of foreseeability but intrinsically in negligence on the part of the insured. Were we to make this principle a part of the law of this State, it would not only do violence to the reason for buying accident insurance but if it did not preclude recovery in a great majority of deaths arising from accidents, it would place an almost insurmountable burden on the insured to enforce liability."

The Nash case, critical as it was of the foreseeability rule, was not a case in which there had been any altercation and we are unwilling to assume it would be applied in such a case. In 1959, the First District Court of Appeal of Florida had before it a case where two participants in a crap game reached for the dice and then for their knives at the same time. One of the participants was so badly cut that he lost an arm. At the trial of an

action on an accident policy the trial court gave an instruction that an injury sustained by an aggressor in an altercation which might have been foreseen was not accidental. The jury gave a verdict for the insured and a judgment on the verdict was affirmed on appeal by a brief *per curiam* opinion citing only the Nash case. Guaranty Life Insurance Co. of Florida v. Jackson, Fla.App., 113 So.2d 256. We think the broad doctrine stated in the Nash case does not control here. See also Southern Life and Health Insurance Co. v. Medley, supra.

The judgment of the district court is vacated and the cause is remanded.

Vacated and remanded.