CONTINENTAL ELECTRONICS MANU-
FACTURING COMPANY, Plaintiff-
Appellant,

v.

NAVAJO FREIGHT LINES, INC.,
Defendant-Third Party Plaintiff-
Appellee,

v.

MERCHANTS FAST MOTOR LINES
et al., Third Party Defendants-
Appellees.

No. 71-1187.

United States Court of Appeals,
Fifth Circuit.

July 7, 1971.

J. Carlisle DeHay, Jr., Gordon H. Rowe, Jr., Dallas, Tex., for plaintiff-appellant; Gardere, Porter & DeHay, Dallas, Tex., of counsel.

William Duncan, El Paso, Tex., for Navajo Freight Lines, Inc.

Frank Owen, El Paso, Tex., for Merchants Fast Motor Lines and others.

James L. Gallagher, El Paso, Tex., for American Airlines.

Kemp, Smith, White, Duncan & Hammond, El Paso, Tex., for appellee.

Before AINSWORTH, INGRAHAM and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

Continental Electronics Manufacturing Company brought this action against Navajo Freight Lines, Inc., for $19,350 damages to a large and expensive electron tube transported by Navajo from

El Paso, Texas, to Continental's facility on the RAM Site at White Sands, New Mexico. Navajo cross-claimed against Merchants Fast Motor Lines and American Airlines, two other carriers that handled the tube on earlier legs of the same journey. A jury found for Continental against Navajo in the amount of $5,000 and exonerated the other carriers. The Trial Judge, however, granted Navajo's motion for a judgment notwithstanding the verdict, on the ground that the evidence was insufficient to support the assessment of damages against Navajo in the amount of $5,000. Continental took this appeal. We reverse and remand the cause with directions that judgment be entered for Continental on the jury's verdict.

The electron tube involved in this case was described at the trial as a cylinder two feet long and a little over one foot in diameter, made of glass and metal, "similar to a regular tube only a larger size." It was built by RCA to Continental's specifications for installation in a VHF radar transmitter at White Sands. RCA tested the tube at its plant in Lancaster, Pennsylvania, and shipped it to Continental in a large wooden crate. The tube hung suspended inside the crate by eight heavy coil springs.

American Airlines flew the crate to Dallas; Merchants Fast Motor Lines took it from Dallas to El Paso. Navajo, the defendant in this suit, transported it the last sixty miles to White Sands. The evidence tended to show that at the time it was loaded on board the Navajo truck, the crate was still in good shape. When the crate arrived at White Sands, however, Continental employees found the top askew and one or two metal seals along the top broken. Because of the apparent possibility of damage to the tube, the Continental engineers tested it with an ohmmeter before they took it off the truck. The meter read zero. They unloaded the crate, took out the tube, and carefully rolled it into several different positions, testing it in each position. The engineers concluded that the tube had an "intermittent grid-to-cath-ode short," that it was useless in that condition, that it could not be repaired without being taken apart, and that it would have to be sent back to RCA in Pennsylvania. Continental so notified Navajo. Navajo sent out a salesman, who discussed the problem with the Continental engineers and signed with one of them a damage report which concluded, "FINAL ASSESSMENT OF DAMAGE WILL BE MADE BY RCA LANCASTER PA."

The crate was thereupon shipped back to Lancaster via a carrier or carriers not identified in the record in this case. It arrived there with fresh damage: a board had been knocked loose from the side of the crate, and the RCA employees inspecting it concluded that the tube itself had hit against the side of the crate and dislodged the board. The ohmmeter check again showed a grid-to-cathode short. The tube proved to have a broken cathode.

Continental brought this action to recover from Navajo the full cost of the repairs to the tube by RCA, which the evidence indicated was $19,350. Navajo denied liability in any amount, and impleaded American Airlines and Merchants Fast Motor Lines. The carrier(s) on the return trip to Pennsylvania were not joined. The case was submitted to the jury on special interrogatories, which it answered as follows:

"1. Do you find from a preponderance of the evidence that the tube in question was damaged while in the possession of Defendant NAVAJO FREIGHT LINES, INC., which company accepted the tube at El Paso, Texas and delivered it to Plaintiff at White Sands.

Answer YES or NO *Yes.*

"2. If you find that the tube was damaged while in the possession of Defendant NAVAJO, do you find from a preponderance of the evidence that such damage was

proximately caused by NAVA-JO's negligence?

Answer YES or NO *Yes.*

"3. Do you find from a preponderance of the evidence that the tube in question suffered damage between Lancaster, Pa. and El Paso, Texas on the original shipment?

Answer YES or NO *No.*

"4. Do you find from a preponderance of the evidence that the tube in question suffered damage between White Sands and Lancaster, Pa. on its return to R.C. A. for repairs?

Answer YES or NO *Yes.*"

The jury returned a verdict for Continental and assessed damages at $5,000. The Trial Judge, however, granted Navajo's timely motion for a judgment notwithstanding the verdict on the issue of damages alone. Pursuant to Fed.R.Civ. P.Rule 50(c), the Trial Judge ruled, with respect to the alternative motion of Navajo for a new trial, that if it should be held on appeal that there was evidence sufficient to support the jury's damage verdict, judgment should be entered for Continental in the sum assessed by the jury.

 The issue framed by the parties on appeal is whether, under applicable principles of Texas tort law,[1]

Continental was required to prove with reasonable certainty what portion of the total damage to the tube was attributable to Navajo's negligence, or whether instead Continental could hold Navajo "jointly and severally liable" with the return-trip carrier(s) for the entire amount of the damage.

Prior to 1952, this case would have been governed by the Texas rule of Sun Oil Co. v. Robicheaux, 23 S.W.2d 713, 715 (Tex.Com.App.1930):

[W]here a person contributes to an injury along with others, he must respond in damages, but if he acts independently, and not in concert of action with other persons in causing such injury, he is liable only for the damages which directly and proximately result from his own act, and the fact that it may be difficult to define the damages caused by the wrongful act of each person who independently contributed to the final result does not affect the rule.

In 1952 the Supreme Court of Texas, in a long and thoughtful opinion in Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731, overruled *Robicheaux.* The opinion in *Landers* dwelt at some length on the criticism which the rule approved in the *Robicheaux* case had received, and the hardship it imposed on a plaintiff who could prove the extent of his injury and

---

1. Plaintiff alluded in its complaint to the Carmack Amendment, 49 U.S.C. § 20 (11). In actions under the Carmack Amendment, "the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." Missouri Pacific R. Co. v. Elmore & Stahl, 1964, 377 U.S. 134, 138, 84 S.Ct. 1142, 1145, 12 L.Ed.2d 194. The Trial Judge did not instruct the jury on the Carmack Amendment, though requested by the plaintiff to do so. Instead, he charged the jury that the plaintiff, in order to recover, had to prove by a preponderance of the evidence that the defendant was negli-

gent. No party objected to the failure of the Trial Court to give a Carmack charge. The jury found that Navajo was negligent in handling the electron tube, and returned a verdict for the plaintiff accordingly.

On this appeal from the Trial Judge's order granting a judgment for Navajo notwithstanding the verdict, both parties rely solely on Texas authorities on the issue of plaintiff's damages. Under these circumstances, and in the absence of any authorities to the contrary, we have concluded to give effect to Texas law on this particular issue. See Autrey v. Williams and Dunlap, 5 Cir., 1965, 343 F.2d 730, 750; Connecticut General Life Insurance Company v. Breslin, 5 Cir., 1964, 332 F.2d 928, 932; cf. McCrea v. Harris County Houston Ship Channel Nav. Dist., 5 Cir., 1970, 423 F.2d 605, 610.

its several causes, but could not prove with reasonable certainty what portion of the injury was attributable to any one cause. The courts of Texas, the majority noted (248 S.W.2d at 734),

> seem to have embraced the philosophy * * * that it is better that the injured party lose all of his damages than that any of several wrongdoers should pay more of the damages than he individually and separately caused. If such has been the law, from the standpoint of justice it should not have been; if it is the law now, it will not be hereafter.

Thereupon the court laid down the new rule (id.):

> Where the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which from its nature cannot be apportioned with reasonable certainty to the individual wrongdoers, all of the wrongdoers will be held jointly and severally liable for the entire damages and the injured party may proceed to judgment against any one separately or against all in one suit. If fewer than the whole number of wrongdoers are joined as defendants to plaintiff's suit, those joined may by proper cross action under the governing rules bring in those omitted.

Navajo contends that the *Landers* rule is inapplicable to the instant case because the injury to Continental's electron tube was not indivisible. We disagree. The evidence tended to show that Continental's engineers at White Sands had neither the equipment nor the knowledge required to make an on-site evaluation of the damage. If Navajo, upon learning of the claimed injury, had insisted on or requested such an evaluation, its contention that it should not be prejudiced now by the fact that none was made would carry more weight. In fact, Navajo made no such request, but joined in Continental's suggestion that the damage be assessed by RCA in Pennsylvania—which was done. There seems to be no question that, on the evidence now available, it is impossible to determine what the cost of repairing the damage done by Navajo alone would have been.[2] The damage is no more "divisible" than was the damage in *Landers* (pollution of a lake from independent sources) or in subsequent cases in which the *Landers* rule has been applied.[3]

We believe that the Texas courts would hold this case to be governed by the *Landers* rule. Applying the *Landers* standard, there was ample evidence to support a verdict in favor of Continental in the amount of $5,000. The plaintiff does not contest the verdict, but seeks to have judgment entered on it. Accordingly, the judgment of the District Court is reversed, and the cause remanded with directions that judgment be entered in favor of Continental against Navajo in the amount of $5,000.

Reversed and remanded.

---

2. It has been suggested that *Landers* and the cases in which it has been followed stand for the proposition that defendants collectively liable for damage to a plaintiff "have the burden of proving any basis for division." See W. Prosser, Handbook of the Law of Torts § 42 at 254 (3d ed. 1964). Navajo has failed to sustain any such burden.

3. E. g., Riley v. Industrial Finance Service Co., 157 Tex. 306, 302 S.W.2d 652 (1957) (mental and emotional distress brought about by the harsh and oppressive collection methods of several loan and credit insurance companies); Blackburn v. Sanders, 278 S.W.2d 924 (Tex.Civ.App. 1955, writ ref'd), (claim by materialmen who furnished construction materials to agent who represented two different partnerships); Kirby Lumber Corp. v. Walters, 277 S.W.2d 796 (Tex.Civ.App. 1955) (damages sustained in automobile collision resulting from mud brought on highway by trucks owned by various defendants).