In re Rocky HUNT d/b/a Four Star Property Services and Sylvia Hunt, Debtors.

In re R.H. TRANSPORT, INC., Debtor.

Rocky HUNT, Sylvia Hunt, RH Transport, Inc., Randolph N. Osherow, Trustee for the Estate of Rocky & Sylvia Hunt and Johnny Thomas, Trustee for the Estate of R.H. Transport, Inc., Plaintiffs,

v.

HEB FEDERAL CREDIT UNION, Tim Bernas, Parkway Transport, Inc., Parkway Distributors, Inc., and Parkway Custom Carriage, Inc., Defendants.

Randolph N. OSHEROW, Trustee for the Estate of Rocky & Sylvia Hunt, Plaintiff,

v.

HEB FEDERAL CREDIT UNION, Defendant.

Bankruptcy Nos. 94–52513–C, 96–55070–C. Adversary Nos. 96–5205–C, 96–5156–C.

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

July 24, 1997.

Martin A. Gewertz, San Antonio, TX, for Rocky Hunt and Sylvia Ayala Hunt.

Randolph N. Osherow, San Antonio, TX, trustee.

Deborah D. Williamson, San Antonio, TX, for R.H. Transport, Inc.

Johnny W. Thomas, San Antonio, TX, trustee.

### DECISION AND ORDER ON MOTION OF DEFENDANTS PARKWAY TRANSPORT, PARKWAY DISTRIBUTORS, INC. AND PARKWAY CUSTOM CARRIAGE, INC. FOR LEAVE TO FILE AMENDED ANSWER

LEIF M. CLARK, Bankruptcy Judge.

On June 15, 1997, this court conducted a hearing to consider the arguments of counsel on the motion of Defendants Parkway for leave to file their second amended answer. This decision and order disposes of that motion. For the reasons set out below, the court grants the motion to amend, insofar as it urges an amendment to the Defendants' consent to the entry of final orders in this case (to the extent that the underlying causes of action are noncore in nature), but denies leave to amend to make a jury demand (or alternatively strikes such jury demand as untimely).

### Procedural Background

The court's resolution of this matter can only be understood against the procedural back-drop of this case. In 1994, Rocky and Sylvia Hunt filed a Chapter 7 bankruptcy case. Randolph N. Osherow was appointed trustee in that case. Later, the Hunts, together with their trustee in bankruptcy (Mr. Osherow), and their corporation, R.H. Transport, filed a lawsuit in state court against various parties, including the Parkway defendants (we shall refer to them collectively as "Parkway"). In November 1996, R.H. Transport (we shall refer to them here as RH) filed its own Chapter 7 bankruptcy case, for which Mr. Johnny Thomas was appointed as trustee. RH promptly filed a notice of removal, bringing this action into the bankruptcy court. The notice of removal stated that the subject matter of the lawsuit was a "core proceeding" within the meaning of 28 U.S.C. § 157(b). No party contested this categorization within ten days, as is required by Rule 9027(e)(3) of the Federal Rules of Bankruptcy Procedure. See FED.R.BANKR.P. 9027(e)(3).

This second bankruptcy case was assigned to the docket of the Honorable Ronald B. King. Upon his receipt of the materials indicating the removal of the state court proceeding, he issued a show cause order as to why the matter should not be remanded to state court. The show cause hearing was originally scheduled for December 2, 1996, but was continued to January 7, 1997. In the meantime, January 1, 1997 was the effective date for a docket equalization reallocation, under which Judge King transferred 30% of the San Antonio case filings (on a "blind draw" basis) to the undersigned judge.[1] The January 7, 1997 hearing date was thus before Judge Clark (the undersigned judge) rather than Judge King. This court does not take the view that a federal court has the unilateral responsibility or authority to "impose" remand. Instead, this court requires parties to timely raise the issue of remand in accordance with the bankruptcy rules, failing which the matter is simply placed on the court's docket and tried as an ordinary adversary proceeding. The show cause order was thus dissolved. No party filed a motion for remand.[2]

---

1. Prior to the docket allocation, Judge King had 80% of the San Antonio case filings, while Judge Clark (the undersigned judge) had 20% of the San Antonio filings and 100% of all El Paso filings. The docket equalization reallocation resulted in the transfer of virtually all El Paso cases to the Hon. Larry E. Kelly, and Judge Clark's assumption of 50% of the San Antonio case load, meaning that an additional 30% of the pending cases in San Antonio needed to be transferred to Judge Clark to accomplish the docket equalization.

2. Though it may not be particularly relevant for the disposition of this matter, Parkway maintains that it was "lulled" into believing that this matter would be remanded by the tenor of Judge King's show cause order; otherwise, it would have filed a timely motion for remand. The court need not rule on the merits of this contention. It is enough to note that Parkway did not in fact file a

At the January 7th hearing, this court ordered the procedural consolidation of the removed state court action with a then-pending bankruptcy action which had also been initiated by Mr. Osherow (seeking the recovery of an alleged fraudulent conveyance), and directed the parties to timely amend their pleadings to conform to federal rules of pleading. Parkway's counsel was apprised of the schedule and timely filed an amended answer in conformity with the federal rules.

Plaintiffs, to be specific, filed a second amended complaint on January 17, 1997, in compliance with the schedule announced at the January 7, 1997 hearing. On January 24, 1997, Parkway filed its first amended answer to this complaint. Among other things, Parkway expressly admitted the allegations contained in the first eleven paragraphs of that complaint, including an allegation by plaintiffs that the matter was a core proceeding under 28 U.S.C. § 157(b)(2)(B), (C), (H), (K), and/or (O). In addition, Parkway failed to set out a jury demand within this first amended answer.

Parkway evidently realized the error of its ways, and on February 5, 1997, filed what it denominated as its second amended answer. This time, Parkway *did* expressly deny the allegation that the actions urged against it were core proceedings, and affirmatively stated that it (Parkway) did not consent to the bankruptcy court's entry of final orders or judgment. Parkway did not accompany this pleading with a motion for leave to file, however.[3] Nor, for that matter, did Parkway incorporate into *this* answer any jury demand. However, on the same day, Parkway filed a motion to withdraw the reference, and in *that* pleading stated "Defendants are entitled to a jury trial on all issues." Parkway added that it did not consent to the bankruptcy court's conducting the jury trial. *See* 28 U.S.C. § 158(e).

▮▮▮ Time passed. The parties pursued mediation, in an effort to resolve their disputes, and obtained an order from this court staying the scheduling order while they pursued this alternative route. The effort proved worthwhile, at least in part, as the parties entered into a settlement of all the disputes as between all of the parties—except for Parkway. The settlement was approved by this court on June 5, 1997. On the same date, the court also ruled on the pending jury demand issue, stating that no timely jury demand had been made by Parkway.[4]

timely motion for remand, and Parkway knew or should have known that the show cause matter was no longer pending before Judge King, but was instead pending before Judge Clark.

3. Parkway evidently believed that it did not need a motion for leave to file, because this second amended answer was filed within the time frame permitted by this court's scheduling order.

4. The court ruled, in essence, that Rule 81(c) of the Federal Rules of Civil Procedure was not applicable in bankruptcy cases. Rule 81(c) provides that a jury demand made in a state court proceeding is deemed effective in the action upon removal to the federal court. See Fed R.Civ.P. 81(c); see also Fed.R.Bankr.P. 9027(g) (derived from Rule 81(c) but containing no counterpart to that rule's "shelter" provision for jury demands). Because the rule was not made part of the bankruptcy rules, Parkway's state court jury demand did not carry over into the removed action. Parkway would thus be bound to affirmatively re-urge its demand for a jury, and would have to do so consistent with the applicable rule. The court next adverted to Bankr.L.R. 9015, which expressly makes Rules 38 and 39 of the Federal Rules of Civil Procedure applicable to proceedings brought in bankruptcy cases in this district. Rule 38 in turn requires that a jury demand must be made within 10 days after the service of the last pleading directed to the issue upon which demand is based, and states that failure to make a timely demand constitutes a waiver by that party of trial by jury. See Fed. R.Civ.P. 38(b), (d). No jury demand was made in Parkway's first amended answer. Parkway's second amended answer did not "count" because it was not accompanied by a motion for leave to file, as required by the federal rules. See Fed.R.Civ.P. 15(a); see also Fed.R.Bankr.P. 7015(a). In any event, the second amended answer also did not contain a jury demand. Instead, ruled the court, Parkway only obliquely made such a demand, but not within the adversary proceeding itself. Instead, it urged the demand primarily as a ground, within its motion addressed to the *district court* seeking withdrawal of the reference. A motion to withdraw the reference is an independent action, brought pursuant to section 157(d), seeking the district court's exercise of its overall supervisory powers over bankruptcy matters, all of which are pending before a bankruptcy court only by virtue of the general order of reference. See 28 U.S.C. § 157(d). Such motions are not, therefore, brought to the attention of the court which has the duty to rule on either amendments or jury demands, the court to whom the case remains

However, the court advised Parkway that it could always seek leave to amend and in that way attempt to fix its problems. RH's trustee's counsel promptly responded that it would want the opportunity to respond to any such request, and insisted that a deadline be imposed for further amendment, as no pretrial scheduling order had yet issued in the case. The court accordingly set a deadline, which Parkway has met, this time accompanying its proposed amended answer with a motion for leave to file same, to which RH has responded in opposition.

### Positions of the Parties

The amended answer raises no new factual issues or new defenses. It merely now urges a jury demand and also expressly includes Parkway's challenge to the characterization of the case as one falling within the core "jurisdiction" of this court and further urges its nonconsent to the entry of a final order by this court.[5] Parkway alleges that leave to amend ought nonetheless be granted because (a) Rule 15(a) expressly provides that leave to amend ought to be freely granted, especially when there is no undue delay or prejudice to the other party demonstrated and (b) it is only by amendment that Parkway can successfully make its jury demand in a timely manner, given the prior ruling of the court on this issue, and further raise its challenge to the plaintiff's contention that this adversary proceeding (or more precisely, what is left of it after settlement of the remaining matters) is core. Parkway adds that it has been so grievously prejudiced by the inequities of its having relied to its detriment on its belief that Judge King would remand this case to state court and by its belief that Rule 81(c) would allow its state court jury demand to "ride through" into his proceeding, that simple justice demands that the court grant leave to amend. Parkway adds that it is a victim of technicalities, and that the court should look through form to the substance of what is going on—and Parkway brands that as a bald effort on the part of RH to deprive it of what it denominates as its otherwise clear entitlement to a jury trial in the district court.

RH (we use this rubric to refer to the RH estate, represented by its chapter 7 trustee, Mr. Thomas) responds that, while the general rule is indeed that motions to amend ought, in the usual case, to be granted (and acknowledges that the discretion of the trial court *not* to grant such motions is limited), this is not the usual case. Here, no new facts are being pleaded, nor are any new defenses being raised. The merits of the litigation are entirely unaffected by whether this amendment is or is not granted. Instead, this amendment is sought solely for the purpose of triggering the "last pleading" requirement of Rule 38(b), so that Parkway can then make a jury demand which will be "timely." That, says RH, is not a legitimate ground for amendment. To the contrary, it

---

assigned for so long as the reference remains in place (and it remains in place until the district court *rules* on a motion to withdraw the reference, not simply until such time as the district court is *presented* with such a motion). See FED. R.BANKR.P. 5011(c); *cf. Orion Pictures, Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1102 (2d Cir.1993) ("a district court also might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court"). As such, a "demand" made in an independent motion to withdraw the reference, ruled the court, does not operate as an effective jury demand in the adversary proceeding itself, within the meaning of Rule 38(b). Therefore, no timely jury demand had been made by Parkway, concluded the court, and it would therefore be deemed waived pursuant to Rule 38(d).

5. Parkway insists vociferously that, in staking out its position, it is merely asserting its rights, as well as attempting to prevent having to endure an extra level of judicial consideration. It believes that, by demanding a jury, it is simply insisting on its Seventh Amendment rights. It further argues that, by refusing to consent to a jury trial in the bankruptcy court, Parkway is neither seeking delay nor engaging in forum shopping, though of course its nonconsent would invariably require the matter to be tried in the district court, placing the case onto that court's busy trial calendar. Intended or not, then, Parkway's position *accomplishes* both a change of forum and a delay in the trial of the matter. Parkway maintains that, by forcing the matter to trial in district court, they will avoid an extra layer of appeal, reducing their costs.

argues, courts have often *denied* motions for leave to amend in precisely such circumstances. RH adds that no injustice is visited on Parkway that. Parkway has not in fact brought on itself, and that Parkway in fact simply wants an exemption from the operation of the federal rules to cover its own mistakes. To do so, maintains RH, actually harms the plaintiff, which has elected this forum and otherwise followed the rules. Parkway, says RH, has had every opportunity to preserve its asserted entitlement to a jury trial, to urge its objections to the core jurisdiction assertion, and even to seek a remand of this case. That Parkway has failed to pursue these opportunities is certainly not the fault of RH, which prefers trial in this forum and has elected to seek a bench trial, in part because of the speed with which the matter can be reached in this forum as compared to the alternatives available.

### Analysis

■ The general rule regarding motions to amend pleadings in federal court is one of liberality in favor of amendment, though the trial court does enjoy some limited discretion in denying such requests. *See* FED.R.CIV.P. 15, FED.R.BANKR.P. 7015: *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir.1981) (leave should be freely given in the absence of a "substantial reason to deny the leave to amend"). One ground for denying leave to amend is "futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).[6]

■ The Fifth Circuit has, on occasion, affirmed a trial court's denial of a request for leave to amend on grounds of "futility." For example, a party was not permitted to amend when the posture of the case was such that only parole evidence would be available to prove up the contentions to be pleaded in the amendment. Because parole evidence would not be admissible in that case (the trial court had properly found the contract in question to be unambiguous), amendment, said the court,, would be futile and was properly barred. *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.,* 933 F.2d 314, 321 (5th Cir.1991). If a complaint as amended would still be subject to dismissal for failure to state a claim, that too would render amendment a futile act, justifying denying leave to amend. *Addington v. Farmer's Elevator Mutual Ins. Co.,* 650 F.2d 663, 667 (5th Cir.1981).

■ In the case at bar, Parkway does not seek leave to amend in order to urge a previously unasserted defensive theory, or new denials of facts, or the like. The merits of Parkway's defenses are as fully presented by extant pleadings already on file, even without this latest amendment. So why is Parkway even trying to file an amended pleading, if not to urge some new set of facts, some new affirmative defense, some new denials?

Parkway candidly acknowledges but two reasons for its proposed amendment. Firstly, Parkway failed to timely demand a jury, and hopes, by this latest pleading, to trigger the "last pleading directed to the issue" (in this case, Parkway's own pleading) language in Rule 38(b). Secondly, Parkway has in previous pleadings acceded to the plaintiffs' characterization of this adversary matter as a "core proceeding," and consented to this court's adjudication to judgment. It now wants to challenge that characterization, and further wishes to withdraw its consent.

With regard to the first proffered reason for amendment, Parkway's efforts must fail, as its amendment would be but a futile act. Indeed, even if amendment were permitted for the second proffered reason (to be dis-

---

**6.** Other grounds include undue delay, or prejudice to the opposing party. *Id.* The use of the word "include" indicates a willingness on the part of the Court to accommodate as-yet-unforeseen situations in which the discretion of the trial court might justifiably be exercised, albeit with appropriate deference to assuring that the party moving for leave to amend is permitted its "day in court" on the merits of its complaint or defense. *Id. see also Dussouy, supra.* By the same token, however, "[i]t is appropriate for the court to consider judicial economy and the most expeditious way to dispose of the merits of the litigation." *Dussouy,* 660 F.2d, at 599 (*citing Zenith Radio v. Hazeltine Research,* 401 U.S. 321, 329, 91 S.Ct. 795, 801, 28 L.Ed.2d 77, 87 (1971) and *Summit Office Park v. United States Steel,* 639 F.2d 1278, 1286 (5th Cir.1981) (Wisdom, J., dissenting)).

cussed further *infra* ), the resulting jury demand would nonetheless have to be stricken as untimely. The Fifth Circuit has spoken directly to this issue:

> Rule 38(b) states that any party may demand a jury trial of any issue triable as of right by a jury by serving upon the other parties a demand therefor in writing any time after the commencement of the action and not later than ten days after the service of the last pleading directed to such an issue . . . . Assuming that a legal claim existed, the issue is whether the state sought a jury trial within ten days from the last complaint raising it as an issue. A complaint "raises an issue" only once within Rule 38(b)'s meaning when it introduces it for the first time. *Amendments not introducing new issues will not give rise to a demand for a jury trial.* *Connecticut General Life Insurance Co. v. Breslin,* 332 F.2d 928 (5th Cir.1964) (defendant's amended answer did not raise issues materially different from those presented by the original answer and waiver of jury trial remained effective); *Swofford v. B. & W., Inc.,* 34 F.R.D. 15 (S.D.Tex.1963) (where new jury issues are created by amendment a party may properly demand a jury trial, but an amendment which neither changes the nature of the case nor introduces new issues does not renew that right). The term "new issues" has been interpreted to mean *new issues of fact and not new theories of recovery. See Jackson v. Airways Parking Co.,* 297 F.Supp. 1366 (D.Ga.1969). *See also Trixler Brokerage Co. v. Ralston Purina Co.,* 505 F.2d 1045 (9th Cir.1974). The record in this case reveals that the plaintiffs' amended complaints are restate-

ments of their earlier pleadings and do not raise new issues which give rise to a demand for a jury trial.

*Guajardo v. Estelle,* 580 F.2d 748, 752–53 (5th Cir.1978) (emphasis added). The final sentence of the foregoing quote applies almost precisely to our facts: "[t]he record in this case reveals that the [defendants'] amended [answers] are restatements of their earlier pleadings and do not raise new issues which give rise to a demand for a jury trial." *Id.* Nor is it relevant that Parkway is the defendant rather than the plaintiff. The Fifth Circuit in *Breslin,* cited in *Guajardo* above, there stated that "[t]he amended answer did not raise any issues which were in any material way different from those presented by the original answer. In such a case the waiver originally made remains effective and the subsequent demand is ineffective." *Connecticut Gen. Life Ins. Co. v. Breslin,* 332 F.2d 928, 932 (5th Cir.1964). These are our facts. Parkway waived its jury demand pursuant to Rule 38(d) when it failed to make a timely demand in its earlier filed answer. An amended answer urged solely to rectify that waiver is not effective to cure the waiver.[7] Any such amendment, urged for that purpose alone, would thus be futile. Alternatively, the demand would have to be stricken as ineffective even were the amendment allowed on other, independent grounds. *Breslin, supra.*

The second proffered justification for amendment, however, has greater force. The court must make a determination whether the matter to be tried is core or non-core, a finding that has a profound effect on the court's ultimate disposition. If the matter be

---

**7.** Breslin points out that the party in that case failed to move for jury trial pursuant to Rule 39(b). That is the case here as well. However, this court would be far less likely to exercise the discretionary authority conferred in that rule to grant such a motion, because of the collateral impact that a jury demand would have in this case. Assuming, for the sake of discussion, an independent right to jury trial of the issues in this case (the *sine qua non* for presenting a Rule 39(b) motion to the court), Parkway has already indicated that it would also refuse to consent to the conduct of a jury trial by this court (notwithstanding Congress' express authorization for the conduct of such trials by the bankruptcy courts in section 157(e), enacted in 1994). *See* 28

U.S.C. § 157(e). By withholding consent while maintaining its jury demand, Parkway would force the trial of this matter into the district court, and onto the district court's busy trial docket. *See Matter of Clay,* 35 F.3d 190, 196 (5th Cir.1994). That might result in a delay of the trial of this matter; it would of a certainty assure that a different judge presided over the matter. With such collateral considerations in play, this court does not believe it particularly unfair to require litigants to cut square corners with respect to the preservation of their jury rights as provided in the federal rules. Nor does the court find it particularly unfair to presume counsel's familiarity with those rules.

noncore, and a party refuses to consent, then this court will not enter a final judgment, but will instead submit a report and recommendation, to which the parties may object (and must do so in a timely manner), and which will then be forwarded to the district court for its consideration and the entry of judgment. 28 U.S.C. § 157(c)(1). If, on the other hand, the matter be core, then this court may enter judgment thereon, with or without the consent of the parties. *See* 28 U.S.C. § 157(b)(1). Section 157(b)(3) expressly permits this determination to be made either on the court's own initiative or "on timely motion of a party."

Section 157 of title 28 was designed to ameliorate the constitutional infirmities found to have been present in prior section 1471 of that tide. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 59, 102 S.Ct. 2858, 2865, 73 L.Ed.2d 598 (1982); *see also* 1 Norton Bankr. L. & Prac. 2d § 4:17, 4:19 (Clark Boardman Callaghan, 1997).[8] Its provisions for consent are deemed important, in light of the fact that bankruptcy courts are not Article III tribunals. *See Matter of Clay,* 35 F.3d 190, 193 (5th Cir.1994). If those provisions are too narrowly constricted, such as by (for example) making consent irrevocable, the entire scheme is at least colorably threatened. *Cf. Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (cautioning against tacit consent to magistrate judge's conduct of jury voir dire).

The statute affirmatively imposes on the bankruptcy judge the responsibility to make the requisite determination whether a matter is core or noncore, implicating this consent issue. 28 U.S.C. § 157(b)(3). The court has, as of this date, not yet made that determination. Suppose this court were to rule that the defendant were prohibited, by amendment of its answer, from withdrawing its consent. Then suppose that, notwithstanding the assertions of the plaintiffs in their complaint, this court were to determine that the matters the subject of this adversary proceeding (or at least some portion of them) are, after all, noncore? Would we then be justified in holding Parkway to its "consent?" This court thinks not.[9] Parkway's second proffered justification for amending its complaint is accordingly well-taken.

### Conclusion

For all of the foregoing reasons, the court concludes that the motion to amend filed by Parkway ought to be granted for the limited purpose of permitting Parkway to contest the core nature of these proceedings, and to affirmatively assert its withdrawal of its consent to the entry of judgment by this court in the event that the court ultimately determines these to be noncore proceedings. However, Parkway is *not* permitted to amend in order to make what the court finds would be an untimely jury demand. Any such demand as contained in the amended answer to be filed is herewith stricken.

**So ORDERED.**

---

**8.** As discussed in greater detail in the *Norton* treatise, reasonable minds may differ over whether Congress actually succeeded. *See id*

**9.** Indeed, the fact that a denial that a given matter is core, and the accompanying statement of consent or nonconsent, are expressly added to Rule 12 as made applicable in bankruptcy by Rule 7012 further supports our conclusion. *See* Fed.R.Bankr.P. 7012(b). In effect, Rule 7012(b) treats this denial almost like one of the defenses that might be urged against a complaint in a bankruptcy adversary proceeding. A party is traditionally permitted to amend a pleading to urge a "new defense." While the denial that a matter is a core proceeding is not *truly* a defense (it neither contests the factual allegations in the complaint nor sets up an affirmative excuse from liability), its placement in the rules suggests that some latitude ought to be afforded the defendant before "deeming" it to have "consented." Certainly, the rule as written lacks the affirmative "waiver" language that we noted with respect to the jury demand in Rule 38(d).