541 P.2d 336 (1975)
In the Matter of the ESTATE of John Niles GRAY, Deceased.
John A. TYLLE and Donna M. Tylle, Claimants-Appellants,
v.
Helen GRAY, Administratrix-Appellee.
No. 75-154.
Colorado Court of Appeals, Div. II.
October 9, 1975.
Bradley, Campbell & Carney, William J. Campbell, Golden, for claimants-appellants.
Hayden, Ross & Sweeney, William G. Ross, Lakewood, for administratrix-appellee.
Selected for Official Publication.
RULAND, Judge.
On October 11, 1973, John N. Gray, as the owner of a "50 percent interest in a government oil and gas lease" assigned 10 percent of the "operating rights and working interest" thereof to John A. Tylle and Donna M. Tylle, claimants, in consideration of the payment by claimants of $10,000. The assignment provided that all of the funds would be used to drill and complete a well. A few weeks thereafter John N. Gray died unexpectedly. Claimants filed a claim against the estate in the probate court seeking to recover the $10,000 paid or the unexpended portion as a claim of the first class. The probate court determined that the relationship between claimants and decedent established by the assignment did not constitute a fiduciary relationship and that, therefore, *337 the claim did not qualify as a claim of the first class. Claimants appeal. We affirm.
The parties agreed in the probate court and here that whether the claim constituted a claim of the first class hinges on an interpretation of the written assignment, and no other evidence was introduced. Insofar as relevant here, the document recites:
"If for any reason beyond the reasonable control of Assignor the drilling and completion of said well is impossible to complete, Assignor will return to Assignee all of the unspent portion of the development costs received from Assignee and be relieved of any further obligation hereunder.
"Until further notice Assignee hereby appoints and designates Assignor as agent and operator of the said lease for the purpose of development and management. Assignor shall have charge, control and supervision of all operations of every kind to be conducted on said land for the development, drilling of more wells, production, treating, handling and marketing of oil . . . . Notice of termination of said agency shall be effective when delivered to Assignor."
The assignment also provided that claimants would pay a proportionate part of the expense of drilling any additional wells when requested to do so by the decedent and that if claimants failed to do so, decedent could withhold from claimants' share of receipts the amount due for their contribution. Claimants were granted the irrevocable right to take their share of production from the lease "in kind" and to sell that share as they might desire. The document concluded:
"It is not the intention of the parties to create, nor shall this agreement be construed as creating, a mining or other partnership or association between [decedent] and [claimants] or to render them liable as partners or associates."
During argument before the probate court, counsel for the estate represented that approximately $8,600 remained unspent from the $10,000 invested by claimants.
Claims of the first class were formerly limited to funds received by an "executor, administrator, guardian, conservator or trustee" in that capacity. See C.R.S.1953, 152-12-2(1). However, in 1957, the statute was amended so as to allow claims of the first class to be asserted for "personal property held by or in the possession of the deceased person as fiduciary or trustee." See C.R.S.1963, 153-12-2(1) (b) (now § 15-12-805(1) (a), C.R.S.1973). Claimants contend that the assignment imposed fiduciary obligations upon decedent as the agent for securing development of a well, that decedent was unable to complete the well, and that, therefore, their investment must be refunded as a claim of the first class under the 1957 amendment.
The assignment of an oil and gas lease does not create a fiduciary or trust relationship between the assignor and assignee, see Meeker v. Ambassador Oil Co., 308 F.2d 875 (10th Cir.), rev'd on other grounds, 375 U.S. 160, 84 S.Ct. 273, 11 L.Ed.2d 261; Sunac Petroleum Corp. v. Parkes, 416 S.W.2d 798 (Tex.), absent special provisions to that effect. See, e. g., Differding v. Ballagh, 121 Cal.App. 1, 8 P.2d 201. While we agree with claimants that the terms of the assignment quoted above have created an agency relationship, we conclude that the agency created thereby was an agency coupled with an interest because decedent retained an interest in the subject matter of the agency and not merely the proceeds to be derived therefrom. See Annot., 28 A.L.R.2d 1243. Therefore, the decedent's interest was not terminated by his death and his rights and obligations pass to his personal representative. See Phoenix Title & Trust Co. v. Grimes, 101 Ariz. 182, 416 P.2d 979; see also 1965 Perm.Supp., C.R.S.1963, 153-10-13, and H. Parks, Colorado Probate Practice Manual, § 16.8.
Our review of C.R.S.1963, 153-12-2, convinces us that the purpose of the provision *338 allowing certain claims in an estate to be given first priority was to avoid subjecting property not owned by the decedent to disposition by the estate. The question is not before us as to whether the 1957 amendment was designed to broaden the class of claims that qualify as claims of the first class. See H. Parks, supra, § 1611; but see Fleming v. Singer, 168 Colo. 195, 450 P.2d 635 (C. J. McWilliams concurring). Since the decedent held the funds pursuant to an agency coupled with an interest and his rights thereto pass to his personal representative, the first class claim section of the statute does not apply. Disposition of any funds invested by claimants remaining upon decedent's death must be resolved based upon the manner in which the personal representative determines to proceed with decedent's rights and obligations under the assignment.
Judgment affirmed.
SMITH and KELLY, JJ., concur.