**AVATAR EXPLORATION, INC., Vernon C. Moyers, Jr., and Specter Exploration, Inc., Plaintiffs–Appellants,**

v.

**CHEVRON, U.S.A., INC., Defendant–Appellee.**

No. 90–3427.

United States Court of Appeals, Fifth Circuit.

June 12, 1991.

315

Larry C. Hebert, Paul J. Hebert, Sonnier, Hebert, Cabes & Hebert, Abbeville, La., for plaintiffs-appellants.

John Catlet Christian, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for defendant-appellee.

Before JOHNSON, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This appeal requires us to determine the rights and duties of parties to mineral leasing contracts in Louisiana. Appellant Avatar Exploration Co. assigned its interest in a mineral lease to Gulf Oil Co., the predecessor of appellee Chevron U.S.A. Prior to assigning the lease to Gulf, Avatar assigned part of its working interest in the lease to appellants Vernon C. Moyers, Jr. and Steve Jenkins.[1] Gulf did not commence drilling operations on the property prior to the end of the primary term of the lease. Gulf subsequently entered into another lease on the same property.

Appellants brought this action in Louisiana state court, claiming that the original agreement required Gulf to reassign the lease prior to expiration of the primary term. They also claimed an interest in the new lease entered into by Gulf. Chevron removed the action to the district court based on diversity. The district court granted Chevron's motion for summary judgment. We affirm.

---

1. We note that Steve Jenkins assigned his interest to Specter Exploration, Inc., making Specter an appellant rather than Jenkins. For convenience, we will refer to Jenkins rather than Specter as the appellant in this opinion.

## Facts

Avatar entered into a mineral lease for 2067 acres of land located in West Baton Rouge and Pointe Coupee Parishes in Louisiana. Steve Jenkins, an independent landman, negotiated the lease with the Kimballs, the owners of the property, on behalf of Avatar. The lease called for a primary term of three years and sixty days, subject to expiration unless Avatar paid annual delay rentals of $100 per acre or began drilling operations on or before May 29, 1981. Payment of delay rentals extended Avatar's lease rights for each twelve month period. Thus, successive payments of delay rentals on May 29, 1982 and May 29, 1983 would maintain the lease for the entire primary term. The owners of the property also received a one-fifth Lessors' royalty interest.

Avatar never intended to conduct its own drilling operations. It obtained the lease for purposes of assignment at a profit to a party with the finances and expertise to develop the property. To that end, it entered into negotiations with Gulf. Before consummating a deal with Gulf, Avatar assigned a portion of its four-fifths working interest in the Lease to Jenkins and Moyers.[2] These assignments ("Royalty Assignments") gave Moyers and Jenkins each an overriding royalty interest of one and one-half percent (1½%) from its remaining four-fifths (⅘ths) working interest in the mineral lease.

Avatar assigned all of its interest in the lease to Gulf. Gulf paid Avatar $150 an acre for the assignment. From this lump sum payment Avatar was required to pay the first year delay rentals, leaving it a $50 per acre profit. The assignment required Gulf to maintain the lease during its primary term by either paying the remaining delay rentals or beginning drilling operations. A clause in the lease guaranteed Avatar the right to reassignment of the lease if Gulf elected not to pay the delay rentals. Another provision of the lease explicitly burdened the assignment with the overriding royalty interests of Moyers and Jenkins.

Gulf paid the delay rentals as they became due, but did not begin drilling operations on the lease. On May 2, 1984 Murexco Petroleum, Inc. acquired an option from the Kimballs for a mineral lease effective on the date that the Avatar lease expired (commonly known as a "Top Lease"). Murexco and Gulf entered into a letter agreement on May 18, 1984 to the effect that Murexco would exercise its Top Lease option on the Kimball property and assign it to Gulf if Gulf agreed not to commence operations under the Avatar lease. Gulf complied with that agreement. The primary term of the Avatar lease ended on May 29, 1984. Murexco exercised its option on the property, and assigned the resulting lease to Gulf.

Appellants brought an action against Chevron, as successor to Gulf, in Louisiana state court. Appellants claimed that Gulf breached various provisions of the assignment agreement by letting the lease expire and entering into the agreement with Murexco. Avatar alleged that Gulf breached the agreement by failing to reassign the lease prior to expiration of the primary term. Moyers and Jenkins contend that they are third party beneficiaries of the assignment from Avatar to Gulf. As third party beneficiaries, they also seek damages as a result of Gulf's failure to reassign the lease prior to expiration of the primary term. In addition, they claim that Gulf assumed all of Avatar's duties contained in the Royalty Assignments. Gulf allegedly had a duty to grant them overriding royalty interests in the Murexco lease pursuant to the renewal and extension clause of the Royalty Assignments. Finally, Moyers and Jenkins claim that Gulf breached its duty of good faith by refusing to execute recordable instruments evidencing their overriding royalty interests in the Murexco lease. Moyers and Jenkins contend that the terms of the Royalty Assignments obligated Gulf to execute these instruments.

Gulf removed the action to federal court on the basis of diversity and moved for summary judgment. In response, appel-

---

**2.** Vernon Moyers was Avatar's sole shareholder.

lants asked for leave to amend their pleadings to aver mistake. The district court denied the motion, finding it untimely and unnecessary. At the same time the court granted summary judgment in favor of Chevron. The court first held that appellants' claims for damages under the reassignment clause failed because the conditions necessary to trigger the clause did not occur. The court also held that Moyers and Jenkins were not third party beneficiaries to the Avatar assignment, and that Gulf was not obligated to grant them an overriding royalty interest in the Murexco lease.

## I. Reassignment Clause

■ The instrument assigning Avatar's interest in the Kimball property to Gulf contained the following reassignment clause:

Assignor herein reserves the right to a re-assignment of the leases assigned herein if Assignee elects not to pay any delay rentals coming due. Such re-assignment shall be made within sixty (60) days of the rental payment or expiration date.

Avatar claims that Gulf had an obligation pursuant to this provision to reassign the lease to Avatar prior to the expiration of the primary term. Gulf maintained the lease for the duration of the primary term by paying delay rentals, and then allowed the lease to lapse. Avatar allegedly suffered damages as a result of Gulf's failure to reassign the lease prior to the expiration of the primary term. Moyers and Jenkins claim similar damages as third party beneficiaries of the agreement.

The district court granted Chevron's motion for summary judgment on this issue. The court found that the language in the clause obligated Gulf to reassign the lease *only* if Gulf elected to forego making the delay rental payments when they became due. Since Gulf complied with its duty to make delay rental payments, the condition requiring Gulf to reassign the lease never occurred. The language of the clause was found to be unambiguous and no construction of the facts of the case would allow Avatar to recover based on a claimed violation of the provision.

This court reviews the granting of a summary judgment using the same criteria as the district court. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Avatar relies on the language in the reassignment clause providing that "[s]uch reassignment shall be made within sixty (60) days of the rental payment *or expiration date.*" Avatar argues that inclusion of the "or expiration date" language in the clause evidences an intent by the parties for Gulf to reassign the lease if it chose not to pay delay rentals, *and* prior to the end of the primary term. Contending that the main purpose of the clause was to prevent expiration of the lease, Avatar claims that the district court erred in its limited interpretation of the scope of the clause. Because it has offered an alternate interpretation of the clause, Avatar argues that the clause was ambiguous and that summary judgment was inappropriate.

Chevron's response follows the same reasoning as the district court: Avatar was entitled to reassignment of the lease only if Gulf elected not to pay delay rentals. We agree with that interpretation of the reassignment provision. The first sentence of the clause reserved a right of reassignment *if* Gulf elected not to pay delay rentals coming due. The second sentence of the clause began with the words "such reassignment" and described the time limits for reassigning the lease. By using the words "such reassignment," the second sentence was limited in application to reassignment caused by the failure to pay delay rentals described in the first sentence. Nothing in the clause indicated an intent of the parties

to expand the right to reassignment beyond the occurrence of that one event.

Avatar makes much of the inclusion of the words "or expiration date" in the clause. Its primary argument is that if we limit reassignment to an election by Gulf not to pay delay rentals, then the "expiration" language has no purpose. Even if we assume that the expiration language created an ambiguity in the contract, that ambiguity related only to Gulf's time frame for reassigning the lease *after* it failed to pay delay rentals. We do not reach the timing instructions of the second sentence *unless* Gulf decided not to pay delay rentals. An ambiguity in the second sentence cannot prevent summary judgment here since the precondition for its application never occurred.[3]

Undertaking the creation in hindsight of a dispute about the meaning of a contractual provision does not render the provision ambiguous. *Esplanade Oil & Gas, Inc. v. Templeton Energy Income Corp.*, 889 F.2d 621, 624 (5th Cir.1989). Avatar is attempting to create an ambiguity where none exists. The condition required for a right to reassignment never occurred. Since the terms of the reassignment clause were clear and subject to only one reasonable construction, the district court properly granted summary judgment on this issue. This was a straightforward business document between persons skilled in dealing with such matters in a business in which the need for precision in the wording of documents is understood. Ambiguous documents do occur in this industry, but this is not one of them.

■ The district court also held that Moyers and Jenkins were not third party beneficiaries of the assignment from Avatar to Gulf. Moyers and Jenkins were not parties to the agreement between Avatar and Gulf. Without third party beneficiary status, they have no standing to seek dam-

ages for the breach of any provision in the contract. *See New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 467 (5th Cir.1984); *Crowley v. Hermitage Health and Life Ins. Co.*, 391 So.2d 53, 55 (La.Ct.App.1980).

■ The finding of lack of third party beneficiary status of Moyers and Jenkins under Louisiana law was not even necessary. Their claims under the reassignment clause in any event fail for the same reason as the claims of Avatar. As third party beneficiaries, their rights under the contract could not exceed Avatar's rights. We have already decided that Gulf had no duty to reassign the lease prior to the end of the primary term. Since Gulf did not breach its contractual duty under the reassignment clause, Moyers and Jenkins do not have a claim. The district court properly granted summary judgment against Moyers and Jenkins.

## II. Renewal and Extension Clause

■ Prior to assignment of the lease from Avatar to Gulf, Avatar assigned a portion of its working interest in the lease to Moyers and Jenkins. The Royalty Assignments from Avatar to Moyers and Jenkins contained a "renewal and extension" clause:

> In the event Assignee secures an extension, correction or renewal of any lease subject hereto prior to the termination of such lease ... or ... a new lease covering any or all lands described in the leases subject hereto prior to the termination of such leases or within one (1) year thereafter, then the overriding royalty interest reserved herein shall attach to and burden such extension, renewal or new lease, and Assignee ... shall execute a recordable instrument evidencing the existence and effectiveness of the overriding royalty.

---

**3.** As the district court pointed out, the expiration date language probably does have a meaning that is unambiguous. If Gulf had started drilling operations, its duty to pay delay rentals during that period ceased. If drilling operations stopped, Gulf had to start paying delay rentals again 90 days later or the lease would expire. In this situation the anniversary date of the lease would not be the due date for delay rentals. If Gulf chose not to pay delay rentals then, the reassignment clause would operate to require Gulf to reassign the lease within sixty (60) days of this new *expiration date.*

The assignment from Avatar to Gulf included a provision making the assignment "subject to the terms and provisions contained in that certain assignment of Overriding Royalty Interest ... between Avatar ... and Vernon C. Moyers, Jr., and Steve Jenkins."

Moyers and Jenkins advance two claims for damages based on the Royalty Assignments. They first claim that Gulf accepted all of the obligations of the Royalty Assignments by agreeing that the lease assignment was "subject to" the overriding royalty interests. Gulf allegedly breached its duty under the Royalty Assignments by not granting Moyers and Jenkins overriding royalty interests in the Murexco lease as a "new lease on lands described in the leases hereto." They also claim that Gulf breached its duty of good faith by failing to execute recordable instruments evidencing these interests as required by the Royalty Assignments.

The purpose of a renewal and extension clause, or anti-washout provision, in a royalty assignment is to protect the interests of the holder of an overriding royalty on the property. *See, e.g., Otter Oil Co. v. Exxon Co., U.S.A.,* 834 F.2d 531, 533 (5th Cir.1987). Unhindered by an anti-washout provision, a lessee could agree with the landowner to allow a current lease to expire and to enter a new lease on the same land unburdened by the overriding royalty interest. These clauses are for the purpose of extending the overriding royalty interest to new leases obtained on the same property by the same lessee.

Gulf allowed the Avatar lease to expire and immediately obtained the Murexco lease covering the same land. The Murexco lease was not burdened by the overriding royalty interests of Moyers and Jenkins. Moyers and Jenkins claim that Gulf entered this agreement improperly to eliminate their royalty interests.

The problem with their argument is that Gulf was not and is not a party to the Royalty Assignments. Avatar executed the Royalty Assignments *before* it assigned its lease to Gulf. For Moyers and Jenkins to prevail, they must prove that Gulf assumed Avatar's obligations under the Royalty Assignments. We find no help for Moyers and Jenkins in the language of the Royalty Assignments. The Royalty Assignments addressed only the relationship between Avatar and Moyers and Jenkins. The agreements did not contemplate extending the renewal and extension clause to assignees of Avatar such as Gulf.

We also agree with the district court that the language of the assignment from Avatar to Gulf did not make Gulf responsible for Avatar's covenants in the Royalty Assignments. The "subject to" language of the assignment is critical. It did nothing more than put Gulf on notice of an existing burden on the lease it received from Avatar. It did not graft the renewal and extension clause and accompanying duties into the assignment from Avatar to Gulf.

In Louisiana, an overriding royalty interest is considered an appendage to an oil and gas lease. La.Rev.Stat.Ann. § 31:126. Expiration of a lease generally destroys an overriding royalty interest appended to the lease. *Fontenot v. Sun Oil Co.,* 257 La. 642, 243 So.2d 783, 786 (1971); *Wier v. Glassell,* 216 La. 828, 44 So.2d 882, 888 (1950). When the lease expired at the end of the primary term, the overriding royalty interests of Moyers and Jenkins evidenced by the Royalty Assignments also expired. We will not bind Gulf with obligations and duties that it did not agree to accept.

Moyers and Jenkins attempt to resuscitate their interests by arguing that the language of the Royalty Assignments was ambiguous. Since the Royalty Assignments were allegedly ambiguous, they claim that summary judgment was inappropriate. Moyers and Jenkins want the opportunity to introduce parol evidence to prove that the parties intended for the renewal and extension clause to apply to future leases on the property obtained by Gulf.

Under Louisiana law, we must interpret a contract to determine the common intent of the parties. La.Civ.Code Ann. art. 2045. When the words of a contract are clear and explicit, we may not look beyond the contract to interpret their meaning. La.Civ.

Code Ann. art. 2046. Parol evidence is admissible to clarify the intent of the parties only if the language of the contract is ambiguous. *Laspopoulos v. Chaisson*, 413 So.2d 248, 250 (La.Ct.App.1982). Whether an ambiguity exists in contractual language is a question of law for the court. *Freeman v. Continental Gin Co.*, 381 F.2d 459, 465 (5th Cir.1967).

We agree with Moyers and Jenkins that the Royalty Assignments were not models of clarity. As written, the Royalty Assignments burdened new leases on the same property obtained by Moyers and Jenkins (the "assignees") with their overriding royalty interests, and required Moyers and Jenkins to execute a recordable instrument evidencing this interest if Avatar (the "assignor") requested them to do so. As the district court concluded, the parties probably reversed the terms "assignor" and "assignee" in this portion of the Royalty Assignments.

This drafting problem, however, cannot aid Moyers' and Jenkins' argument. Even if the terms assignor and assignee were reversed, the agreement remained a contract between Avatar and Moyers and Jenkins. Nowhere did the Royalty Assignments state or imply that Gulf would assume Avatar's obligations. Had Moyers and Jenkins brought this suit to determine Avatar's obligations under the Royalty Assignments, we might become convinced that parol evidence was necessary to determine the intentions of the parties. But that is not the question presented by this appeal. The issue here is whether the parties intended for Gulf to assume Avatar's obligations under the Royalty Assignment.

Moyers and Jenkins cannot persuade us to look beyond the agreements to determine the intent of the parties. Neither the Royalty Assignments nor the assignment from Avatar to Gulf burdened future leases entered into by Gulf with the overriding royalty interest of Moyers and Jenkins. The renewal and extension clause in the Royalty Assignments applied only between Avatar and Moyers and Jenkins. We hold that summary judgment was appropriate because the language of the agreements

was clear. As a matter of law, Gulf was not bound by the renewal and extension clause. When the Avatar lease expired, the overriding royalty interests of Moyers and Jenkins expired. Gulf had no duty to grant them royalty interests in the Murexco lease.

■ For the same reasons, Gulf did not breach any duty of good faith by failing to execute recordable instruments granting Moyers and Jenkins overriding royalty interests in the Murexco lease. The duty to execute these instruments was contained in the Royalty Assignments. Since we agree with the district court that the provisions of the Royalty Assignments did not bind Gulf, we reject the claim of Moyers and Jenkins involving the failure to execute these instruments.

### III. Amendment to Pleadings

Moyers and Jenkins claim that the district court should have allowed them to amend their pleadings to aver mistake. Moyers and Jenkins responded to Gulf's summary judgment motion with affidavits discussing the negotiations preceding the assignment from Avatar to Gulf. These affidavits allege that the parties intended (1) for the reassignment clause to require Gulf to reassign the lease prior to expiration of the primary term, and (2) for Gulf to assume the responsibilities of Avatar contained in the overriding royalty assignments. Gulf objected to the introduction of these affidavits because appellants' pleadings did not aver mistake with particularity as required by Fed.R.Civ.P. 9(b). Gulf argued that the failure to plead mistake precluded admission of this parol evidence to prove the parties' intentions.

■ Although leave to amend pleadings "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), leave to amend is not automatic. The decision to grant or deny a motion to amend is in the sound discretion of the trial court. *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 890 (5th Cir.1987). The district court denied appellants' motion for two reasons. First, the motion was untimely. The court set a final deadline for the filing of

amendments, and appellants moved to amend their pleadings past the deadline. We often have affirmed denials of motions to amend when the motions have been untimely filed. *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir.1981).

We also affirm denials of motions to amend when amendment would be futile. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666–67 (5th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981). Moyers and Jenkins wanted to amend their pleadings to assure consideration of their affidavits as parol evidence. These affidavits allegedly proved the true intentions of the parties. Since the district court properly found that the agreement between Avatar and Gulf was unambiguous, parol evidence was not admissible to contradict the import of that agreement. Amendment of the pleadings would provide no benefit to Moyers and Jenkins under these circumstances. We hold that the district court did not abuse its discretion in refusing to allow Moyers and Jenkins to amend their pleadings.

### Conclusion

Avatar assigned a portion of its working interest in an oil and gas lease to Moyers and Jenkins. The agreement evidencing this assignment contained several covenants, including a renewal and extension clause. In a separate agreement, Avatar assigned its interest in the lease to Gulf. This agreement contained a reassignment clause requiring Gulf to reassign the lease to Avatar if it chose not to maintain the lease by paying the required yearly delay rentals during the primary term.

Gulf paid the delay rentals until the lease expired at the end of the primary term. Avatar claims that Gulf had a duty to reassign the lease prior to expiration of the primary term, as well as in the event Gulf decided not to pay delay rentals. The express language of the reassignment clause belies Avatar's claim. The claims of Moyers and Jenkins as third party beneficiaries of the reassignment clause fail for the same reason.

Moyers and Jenkins have also failed to establish that Gulf had to comply with the renewal and extension clause in the overriding royalty assignments from Avatar. The Royalty Assignments were appendages to the oil and gas lease and expired when the lease expired. The obligations contained within these Royalty Assignments were between Avatar and Moyers and Jenkins; Gulf was not a party to the agreement.

The decision by the district court rejecting Moyers' and Jenkins' attempt to amend their pleadings was not an abuse of discretion. In light of the court's disposition of the case, an amendment to the pleadings would have served no purpose.

We affirm the judgment of the district court.

AFFIRMED.