The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Robert A. FULLOP, Defendant–Appellant.

No. 84CA0383.

Colorado Court of Appeals, Div. III.

Feb. 13, 1992.

Rehearing Denied March 19, 1992.

Certiorari Denied Oct. 13, 1992.

Gale Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert Mark Russel, First Asst. Atty. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Martin J. Gerra, III, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

The defendant, Robert Fullop, appeals from the judgment of conviction of the crimes of theft and transacting business as an unlicensed securities broker or dealer. He argues that the evidence was legally insufficient to support his conviction of the crime of theft and that the court committed instructional error with respect to the securities' violation charged. We affirm.

Defendant and another individual incorporated Grayhawk Petroleum Corporation (Grayhawk) to acquire capital to develop certain oil properties. Defendant was the president of Grayhawk.

Grayhawk acquired the working interests in three oil leases, subject to certain overriding royalties. Fractional interests in these working interests were then offered to investors by means of a private offering circular, the terms of which were incorporated into individual assignment agreements and operating agreements.

In the offering circular, Grayhawk represented that the funds paid by the investors would be deposited in a "special operating account." They were to be used solely to drill and, if warranted, to complete test wells on the properties, subject to Grayhawk's right to receive a 5% "administrative fee." If the cost of drilling or completing the wells exceeded the amount paid by the investors, each investor agreed to pay his or her proportionate share of such additional costs. If the cost of drilling or completion was less than estimated (the total amount collected from investors being the amount of the estimate), Grayhawk agreed to return the balance of the unused funds on a pro rata basis.

Shortly after the funds collected were deposited in the special account, defendant withdrew a portion of those funds from that account and used them for his own personal purposes. The remaining funds were then spent to drill the test wells, but Grayhawk determined that completion of these wells was not warranted. Because the cost of this initial drilling totalled less than the amount paid by the investors, the

investors became entitled to a pro rata refund, but such refund was not made.

The People, by means of a bill of particulars to the theft count, asserted that various sums of cash were stolen from "Grayhawk Petroleum Corporation 80–1 Investors." This reference was to those persons who had acquired fractional working interests pursuant to the offering circular. Hence, the jurors were required, in order to return a verdict of guilty upon this count, to find that, at the time of its conversion, the investors had an interest in the cash taken by defendant.

## I.

■ The defendant first argues that the investors lost any proprietary interest in the money in question when it was paid over to Grayhawk in return for the transfer to the investors of an interest in the leaseholds. At that time, he contends, the funds became the sole property of Grayhawk, and the investors no longer had any legal or equitable interest in those funds. As a result, he says the only possible victim of the alleged theft was Grayhawk and not the named individual investors. We disagree.

Contrary to defendant's contention, this issue is not governed by *People v. Westfall*, 185 Colo. 110, 522 P.2d 100 (1974). In *Westfall*, an individual invested funds in a yet-to-be formed corporation. In exchange, the investor received stock in the corporation. The defendant there apparently misappropriated the money paid by the stockholder, causing the stock to become worthless. Defendant was convicted of theft from the investor. In reversing this conviction, our supreme court noted that, once a shareholder in a corporation obtains stock, the shareholder is entitled only to receive corporate profits, and such a shareholder has no proprietary interest in the funds or other assets of the corporation. Thus, a decrease in the value of the corporate stock, even if caused by a defendant's theft of corporate assets, cannot constitute theft from a shareholder.

The question presented here, then, is whether, upon payment of the purchase price and conveyance to them of fractional leasehold interests, the investors retained any proprietary interest in the funds paid. We conclude that they did.

■ We agree that, generally, the purchase of a fractional working interest in an oil or gas lease does not, standing alone, give to the purchaser a proprietary interest in the funds paid or in any of the other assets of the operator. *See In re Estate of Gray*, 37 Colo.App. 47, 541 P.2d 336 (1975); 3 W.L. Summers, *Oil & Gas* § 520 (1958).

■ Likewise, because the terms of the operating agreement here gave to the investors no right to participate in managing or controlling the working interest, no mining law partnership between Grayhawk and the investors was created. *Blocker Exploration Co. v. Frontier Exploration, Inc.*, 740 P.2d 983 (Colo.1987). Hence, the investors had no proprietary interest in the funds as the result of any alleged partnership interest.

However, the Grayhawk representation here was that it would hold the funds paid by the investors in a special account and would use the funds only on behalf of the investors. It agreed, therefore, that these funds would not be co-mingled with the corporation's other assets.

■ This agreement, in our view, created a relationship between Grayhawk and the investors that went beyond the relationship normally existing between co-owners and the operator of a working interest. Grayhawk's agreement to segregate the funds in a special account and to use them solely in the investors' interests constituted Grayhawk a fiduciary with respect to such funds. *Cf. In re Estate of Gray, supra* (absent special provisions, "assignment of an oil and gas lease does not create a fiduciary or trust relationship between the assignor and assignee").

And, since the investors were the beneficiaries of such relationship, they continued to possess a beneficial interest in, and equitable title to, those segregated funds. *See First National Bank v. Harry W. Rabb*

*Foundation,* 29 Colo.App. 34, 479 P.2d 986 (1970).

Accordingly, the evidence, viewed in the light most favorable to the People, *see People v. Gonzales,* 666 P.2d 123 (Colo.1983), was sufficient to show that the investors had a proprietary interest in the funds used by defendant and, consequently, to prove that he unlawfully obtained something of value from them. *See People v. Ferguson,* 701 P.2d 72 (Colo.App.1984); *People v. Schlicht,* 709 P.2d 94 (Colo.App.1985).

## II.

■ The defendant next contends that the trial court committed plain error by failing to instruct the jury that the culpable mental state of "willfully" was an element of the offense of selling securities without a license. Although we agree that the lack of such an instruction was error, we conclude that it was harmless.

It is undisputed that, for an individual to be convicted of the felony of being an unlicensed broker or dealer, the individual must act "willfully." Further, it is undisputed that the trial court failed to refer to this specific mental element in any of the jury instructions.

However, under the court's instructions, in order to convict defendant of this charge, the jury was required to find that he "transacted business ... as a broker-dealer ... without being licensed as such broker-dealer."

■ The essence of the mental element, "willful," is that the actor is aware of that which he is doing, i.e., his actions were deliberate and not inadvertent or accidental. *People v. Blair,* 195 Colo. 462, 579 P.2d 1133 (1978). And, the very concept of transacting business carries with it the connotation of a knowing, deliberate act of which the actor is aware.

Further, defendant's testimony here made it clear that he knew that he was selling securities and that the securities were unregistered. But, at no time did he claim, nor did his counsel argue, that he was unaware that he was not licensed.

We conclude, therefore, that the evidence that defendant acted with awareness was overwhelming and that the existence of the requisite mental status was not placed in issue. Hence, the failure to instruct upon that issue was harmless. *See People v. Cowden,* 735 P.2d 199 (Colo.1987).

Judgment affirmed.

METZGER and NEY, JJ., concur.