Marcus A. DEGENHART and Sophia S. Degenhart, Plaintiffs–Appellees,

v.

GOLD KING PETROLEUM CORPORATION, a Colorado corporation, Defendant–Appellant.

No. 92CA0359.

Colorado Court of Appeals, Div. II.

March 25, 1993.

Schoenwald & Lewis, P.C., Forrest W. Lewis, Denver, for plaintiffs-appellees.

Kenneth D. Willis, Denver, for defendant-appellant.

Opinion by Judge HUME.

Defendant, Gold King Petroleum Corporation, appeals a judgment entered in favor

of plaintiffs, Marcus A. and Sophia S. Degenhart, after a bench trial. We reverse.

In 1970, Hilight Drilling Company leased oil and gas rights from William and Cuba Hazlet for a primary term of five years and for so long thereafter as oil and gas production continued in paying quantities. The lease granted lessee the right:

at any time [to] execute and deliver to Lessor, or [to] place of record, a release ... covering any portion or portions of the ... described premises and thereby surrender this lease as to such portion ... and be relieved of all obligations as to the acreage surrendered....

Thereafter, Hilight Drilling assigned the entire working interest in the leased land to Smitherman Oil and Gas Company, which company drilled a successful well prior to assigning the working interest in half of the acreage to defendant. The assignment from Smitherman to defendant (Smitherman assignment) provided that:

[Smitherman Oil and Gas Company] ... reserves the right to purchase at salvage value any wells on the described property ninety (90) days prior to the plugging and abandoning of said wells by [defendant] ... the purpose being to protect and hold in force the overriding royalty interest of [Smitherman Oil and Gas Company].

Defendant subsequently acquired the working interest for the remaining half of the tract subject to production royalty interests which included a 2% overriding royalty interest held by plaintiffs. Plaintiffs acquired their overriding royalty prior to the Smitherman assignment, and they were not parties to that agreement.

In 1981, defendant purchased the fee mineral estate from the Hazlets and thereby became both the fee owner of the mineral estate and of the entirety of the working interest under the lease, subject to overriding royalty interests. By January 1989, the leasehold contained four producing wells, of which defendant held a total revenue interest of 47.5%, plaintiffs held a 2% overriding royalty, and various other assignees connected to the Smitherman assignment (the Smitherman Group) held the remaining 50.5%.

In February 1989, defendant notified the Smitherman Group, pursuant to the Smitherman assignment, of its intention to plug and abandon the wells because they were no longer economically viable. It offered three alternative methods for the Smitherman Group to continue operation of the wells. The Smitherman Group took no action pursuant to that notice, and thereafter, defendant plugged all four wells and, in December 1989, executed and recorded a release of the entire lease. Consequently, defendant owned the mineral estate free of any obligations under the lease. Unlike the Smitherman Group, plaintiffs were not given prior notice of defendant's intent to plug and abandon the wells and to release the lease.

Subsequently, oil and gas prices rose substantially during the Persian Gulf War. In September 1990, defendant redrilled two of the four wells and re-established production.

In January 1991, the Smitherman Group and plaintiffs commenced this action alleging that defendant had wrongfully failed to make overriding royalty payments when production recommenced, thereby breaching an implied duty of fair dealing. Defendant argued that the overriding royalty interests were created by the lease and, thus, were extinguished by its release.

The trial court found that defendant had no control over the rise in prices which helped to make production once again profitable and that its actions as to the Smitherman Group were not taken in bad faith. The court entered judgment against the Smitherman Group because it had notice of defendant's intent to plug and abandon the wells but did not act to protect its interests. Conversely, the trial court entered judgment against defendant and in favor of plaintiffs after finding that "minimal fair play would require notice" and that "any reasonable interpretation of the contract implies ... a duty of notification" to plaintiffs of defendant's intent to plug and abandon the wells.

## I.

Defendant contends that the trial court erred in finding that there was an implied duty to notify. We agree.

■ Absent a contractual provision, there is no implied obligation to notify the overriding interest holder of the exercise of the right of surrender of a leasehold. *Phillips Petroleum Co. v. McCormick,* 211 F.2d 361 (10th Cir.1954).

■ Here, however, the record contains no evidence as to exactly when, how, or under what terms plaintiffs obtained their 2% overriding royalty interest. Furthermore, the lease contains language providing that lessee may execute a release and "deliver [it] to Lessor, or place [it] of record." Therefore, we conclude that no duty is implied by the lease requiring the lessee to notify the overriding royalty interest holders prior to exercising the right of release.

■ Plaintiffs argue that defendant owed them duties of fair play and fair dealing which were not dependent on the terms of a specific contract and that defendant's "maneuvering" constituted a breach of those duties. We disagree.

■ An overriding royalty interest is carved out of the lessee's interest in the oil and gas lease, *Hagood v. Heckers,* 182 Colo. 337, 513 P.2d 208 (1973), and its life is limited by the duration of the lease or other interest from which it was created. *Page v. Fees–Krey, Inc.,* 617 P.2d 1188 (Colo. 1980).

■ Ordinarily, the mere reserving of an overriding royalty in the assignment of an oil and gas lease does not create a confidential or fiduciary relationship. *Brannan v. Sohio Petroleum Co.,* 260 F.2d 621 (10th Cir.1958); *see In re Estate of Gray,* 37 Colo.App. 47, 541 P.2d 336 (1975). Also, a lessee has no duty to the owner of a non-operating interest to keep the lease alive in the absence of contractual agreements to the contrary. *Guinand v. Atlantic Richfield Co.,* 485 F.2d 414 (10th Cir.1973). And, generally, the termination of an oil and gas lease extinguishes the overriding royalty created in an assignment of the lease. *Keese v. Continental Pipe Line Co.,* 235 F.2d 386 (5th Cir.1956).

However, some cases have held the operator to be under an implied duty of fair dealing which bars conduct intended to extinguish the non-operating interest. *Rees v. Briscoe,* 315 P.2d 758 (Okla.1957). Such holdings are factually based either upon a close relationship between the parties, bad faith on the part of the lessee, or specific language of the assignment protecting the overriding royalty interest. *Sunac Petroleum Corp. v. Parkes,* 416 S.W.2d 798 (Tex.1967).

The instrument creating the overriding royalty interest may use language that extends such interest to renewals and extensions of the lease. *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.,* 933 F.2d 314 (5th Cir.1991); *Independent Gas & Oil Producers, Inc. v. Union Oil Co.,* 669 F.2d 624 (10th Cir.1982). *See also Page v. Fees–Krey, Inc., supra.* Or, an overriding royalty may attach to a new lease obtained pursuant to a right created by the provisions of an old lease. *Mimi Corp. v. Hill,* 310 F.2d 467 (10th Cir.1962).

In the absence of a fiduciary or confidential relationship, or an extension, renewal, reassignment, or similar clause in the instrument creating the override, a royalty interest holder has no protection apart from the terms of his contract. *Meeker v. Ambassador Oil Co.,* 308 F.2d 875 (10th Cir.1962) *rev'd on other grounds,* 375 U.S. 160, 84 S.Ct. 273, 11 L.Ed.2d 261 (1963); *Shewmake v. Badger Oil Corp.,* 654 F.Supp. 1184 (D.Colo.1987).

Here, the record is devoid of any evidence indicating any personal or other special relationship between plaintiffs and defendant which could support the existence of a confidential or fiduciary relationship. Nor is there evidence of a contract or assignment providing plaintiffs' overriding royalty interests with protection in the form of an extension, renewal, or reassignment clause, or a provision requiring that they be given notice prior to the release or surrender of the lease.

Therefore, we conclude that the trial court's findings pertaining to defendant's duty to provide such notification to plaintiffs is without any support in law or in the evidence of record.

The judgment is reversed.

TURSI and SMITH,* JJ., concur.