IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-60601
Summary Calendar
_____

LYDIA BETH HUGHES PALMISANO, Individually, as Widow, Heir at
Law and Statutory Beneficiary of Darby John Hughes,
Deceased, and as Mother of Rebecca Rachelle Hughes,
Deceased; and as Mother and Natural Guardian and Next Friend
and duly appointed and acting General Guardian of the Person
and Estate of Misty Lynn Hughes, a minor, individually, as
Daughter, Heir at Law and Stuatory Beneficiary of Darby John
Hughes, Deceased, and as sister, Heir at Law and Statutory
Beneficiary of Rebecca Rachelle Hughes, Deceased; JENNIFER
HUGHES HETRICK, Individually, as Daughter, Heir at Law and
Statutory Beneficiary of Darby John Hughes, Deceased, and as
Sister, Heir at Law and Statutory Beneficiary of Rebecca
Rachelle Hughes, Deceased

Plaintiffs - Appellants

v.

AVIS RENT A CAR SYSTEMS, INC. ET AL

Defendants

AVIS RENT A CAR SYSTEMS, INC.; P.V. HOLDING CORPORATION;
PATHFINDER INSURANCE COMPANY

Defendants - Appellees

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(1:94CV303GR)
_____
April 12, 1996
Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Based on uninsured motorist ("UM") coverage, Lydia Beth Hughes Palmisano and her two surviving daughters, Misty Lynn Hughes and Jennifer Hughes Hetrick (collectively, the "Claimants"), brought a claim against Avis Rent A Car System, Inc., P.V. Holding Corporation, and Pathfinder Insurance Co. (collectively "Avis") arising out of an automobile accident resulting in the death of Darby John Hughes ("Mr. Hughes") and Rebecca Rachelle Hughes, husband and daughter, respectively, of Lydia Beth Hughes Palmisano. The Claimants appeal the district court's grant of summary judgment in favor of Avis and denial of the Hugheses' motion to amend their complaint as moot. We affirm.

## I.  BACKGROUND

On July 2, 1992, Mr. Hughes entered into an agreement with Avis for the rental of an automobile to drive to Florida from his home in Mississippi with his wife and three daughters. In the rental agreement, Mr. Hughes was presented with four nonexclusive insurance options--loss damage waiver, personal accident insurance, personal effects protection, and additional liability insurance. The instructions "READ OTHER SIDE" were printed on the agreement immediately under the heading for each option,

---

[*]    Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

2

except the second, and detailed terms were printed on the back of the page. To indicate his choice with regard to each option, Mr. Hughes initialed either a box labeled "I ACCEPT" or one labeled "I DON'T ACCEPT." The agreement reflects that Mr. Hughes chose to accept the loss damage waiver but that he rejected personal accident insurance, personal effects protection, and additional liability insurance.

According to the amended complaint filed by the Claimants, Mr. Hughes and Rebecca Rachelle Hughes were killed on July 3, 1992, while riding in the automobile rented from Avis. The accident allegedly occurred as a result of a head-on collision with an uninsured drunk driver.

The Claimants filed suit against the driver of the other car and Avis in the United States District Court for the Southern District of Mississippi. The Claimants brought suit against Avis based on UM coverage because the other driver was an uninsured motorist. Avis answered and then moved for summary judgment contending that its agreement with Mr. Hughes was a bailment and not an insurance agreement. Holding that Avis was an insurer, the district court denied Avis's motion. In addition, the court found that Avis--as an insurer--was required by Mississippi law to furnish Mr. Hughes and his family with UM coverage.

Avis moved for summary judgment once again, this time contending that it was obligated to pay no more than $20,000 in UM coverage--the statutory minimum--because Mr. Hughes had rejected the additional liability insurance offered in the

3

agreement.  The Claimants argued that Avis was obligated to furnish $ 1,000,000 in UM coverage based on the amount of additional liability coverage listed as an option in the agreement.  In addition, the Claimants moved to amend their complaint to allege that Avis did not give Mr. Hughes an opportunity to purchase additional liability insurance.  The district court granted Avis's motion for summary judgment and denied as moot the Claimants' motion to amend.  The Claimants appeal from this final order of the district court.

## II. ANALYSIS

### A.    Summary Judgment

We review the granting of summary judgment de novo, applying the same criteria used by the district court in the first instance.  Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994); Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). First, we consult the applicable law to ascertain the material factual issues.  King v. Chide, 974 F.2d 653, 655-56 (5th Cir. 1992).  We then review the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party.  Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1994); FDIC v. Dawson, 4 F.3d 1303, 1306 (5th Cir. 1993), cert. denied, 114 S. Ct. 2673 (1994).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

4

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

It is undisputed that the legal issues in this diversity case must be decided under Mississippi law. Exxon Corp. v. Burglin, 4 F.3d 1294, 1298 (5th Cir. 1993). The Claimants' cause of action is based in the Mississippi Uninsured Motorists Act ("MUMA"), Miss. Code Ann. § 83-11-101(1) et seq., which provides, in pertinent part:

> (1) No automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law, as amended, under provisions approved by the commissioner of insurance; however, at the option of the insured, the uninsured motorist limits may be increased to limits not to exceed those provided in the policy of bodily injury liability insurance of the insured or such lesser limits as the insured elects to carry over the minimum requirement set forth by this section. The coverage herein required shall not be applicable where any insured named in the policy shall reject the coverage in writing . . . .

Miss. Code Ann. § 83-11-101 (emphasis added). The purpose of MUMA is to provide relief for "innocent insured motorists and passengers injured as a result of the negligence of financially irresponsible drivers". Rampy v. State Farm Mut. Auto Ins. Co., 278 So. 2d 428, 432 (Miss. 1973). It is intended "to provide the same protection to one injured by an uninsured motorist as that individual would have if injured by a financially responsible driver." Lawler v. Government Employees Ins. Co., 569 So. 2d

5

1151, 1153 (Miss. 1990).  "Carriers are commanded by [the] statute to provide coverage up to the amount of liability insurance purchased where the insured so desires."  Nationwide Mut. Ins. Co. v. Garriga, 636 So. 2d 658, 665 (Miss. 1994).  In order to compensate innocent insured motorists, the statute is to be liberally construed.  Harris v. Magee, 573 So. 2d 646, 654 (Miss. 1990).

Under Mississippi law, an insurer has a duty to explain UM coverage to the insured "in order for the insured to have the option to increase UM limits not to exceed the limits of the policy."  Aetna Casualty & Sur. Co. v. Berry, No. 91-CA-00107-SCT, 1996 WL 64756, *23 (Miss. Feb. 15, 1996).  Although "[a]n insurer is not necessarily under a duty to recommend that the insured exercise the option of obtaining UM coverage up to the limits of the policy," Id., the insurer bears the burden of proof to show that any rejection of uninsured motorist insurance was a knowing and informed decision.  Atlanta Casualty Co. v. Payne, 603 So. 2d 343, 348 (Miss. 1992).

The contested issue in this case is whether Mr. Hughes was entitled to UM coverage in an amount greater than the minimum amount of liability insurance prescribed by law.  The district court determined that, after consciously considering his options, Mr. Hughes rejected the additional $1,000,000 liability coverage offered in the rental agreement.[2]  Nonetheless, pursuant to the

---

[2]    Mr. Hughes initialed the box marked "I ACCEPT," for the loss damage waiver, and he initialed the box marked "I DON'T ACCEPT," for additional liability insurance.  The district court

Mississippi Motor Vehicle Safety Responsibility Law, despite Mr. Hughes's rejection of liability insurance, he was insured by Avis at the minimum level of liability coverage allowed under Mississippi law--$10,000 per person and $20,000 per occurrence. Miss. Code Ann. §§ 63-15-31 & 43. Avis does not deny that Mississippi's UM coverage scheme was not explained to Mr. Hughes, and that therefore, he was entitled to UM coverage in addition to his liability coverage. However, because Mr. Hughes chose not to accept the additional liability coverage, Avis argues that his UM coverage was limited to the $10,000/20,000 statutory minimum.

Asserting that "high UM coverage is the intent and public policy of the State," the Claimants contend that Mr. Hughes was extended UM coverage in the amount of $1,000,000. The heart of the Claimants' argument is that, because the insurance agreement did not contain a separate offer of UM coverage, the UM coverage limits were merged with the $1,000,000 offer of additional liability insurance. They argue that, had Mr. Hughes been informed of the connection between UM coverage and liability insurance, he might have opted for the additional liability insurance offered in the agreement. Additionally, the Claimants charge that the agreement itself was ambiguous.[3] The district

notes that, "although not controlling in this case, the question whether [Mr.] Hughes consciously considered his options might have been a closer one had he made a blanket rejection of all his options" rather than accepting the loss damage waiver and rejecting the other three.

[3]    The Claimants argue that the lease agreement was ambiguous because it included the statement," I will pay for additional liability insurance if available . . . ."  They

7

court found the argument of ambiguity unpersuasive, as do we: "The clear terms of the contract reflect that the additional insurance was both offered to Hughes and that he rejected it."[4] Moreover, we reject the Claimants' proposed merger of upper UM coverage limits and liability options.

The upper limit of UM coverage mandated by MUMA under an insurance policy is governed by the actual level of liability insurance provided under that policy--not the amount of liability insurance that the insured might have chosen.  Miss. Code Ann. § 83-11-101.  Where, for example, an insured has contracted for liability insurance in the amount of $1,000,000, he may choose to carry up to $1,000,000 worth of UM coverage.[5]  Where he has opted

wonder, "How was Mr. Hughes to know if this $1,000,000.00 liability coverage was available or not?"

[4]    The Claimants also charge that Mr. Hughes exercised no choice at all regarding the insurance options offered in the lease agreement.  They offer the affidavit of Jennifer Hughes Moyer in support of this contention.  Moyer attests that Avis office personnel "gave my father the contract and showed him where to initial several items and then where he was to sign, which he did."
Under Mississippi law, such extrinsic evidence may not be considered when the contract is unambiguous, as in the case sub judice.  Sonat Exploration Co. v. Mann, 785 F.2d 1232, 1235 (5th Cir. 1986) ("Under Mississippi law, . . . . parol evidence may not be used in the interpretation of an unambiguous contract."); Foreman v. Continental Casualty Co., 770 F.2d 487, 489 (5th Cir. 1985) (noting that, an insurance contract, "where clear and unambiguous, must be construed exactly as written"); Weatherford v. Martin, 418 So. 2d 777, 778 (Miss. 1982).

[5]    It should be noted that the statute does not prohibit the insured from purchasing UM coverage in an amount greater than the level of his liability insurance.  "From the beginning, the [Mississippi] legislature provided that the parties were free to contract for coverage in excess of that mandated and that such coverage was not governed by the act."  Garriga, 636 So. 2d at 664-65 (overruling In re Koestler, 608 So. 2d 1258 (Miss. 1992),

8

for $300,000 worth of liability insurance, he may choose to carry up to $300,000 worth of UM coverage.  In any event, however, an insured is guaranteed coverage in an amount no less than the statutory minimum level of liability insurance.  Miss. Code Ann. §§ 63-15-31 & 43.  Where the insurance agent has failed to explain UM coverage to the insured, "damages should not be awarded in an amount less than the statutory minimum for UM coverage, $10,000, nor in an amount more than the limits of the particular policy in question--i.e., no more than [the amount of UM coverage] the insured could have opted for under the terms of the policy.  <u>Aetna Casualty & Sur. Co. v. Berry</u>, No. 91-CA-00107-SCT, 1996 WL 64756, at *23.  In the instant case, for purposes of the statute, Mr. Hughes could not have opted for UM coverage in an amount greater than the statutory minimum because he did not accept liability coverage over the statutory minimum.

Therefore, we find untenable the Claimants' conclusion that Mr. Hughes was protected by UM coverage in the amount of $1,000,000.  We find no support in Mississippi law to justify a jump from the rule explicitly set forth in MUMA to the one proposed by the Claimants.  The notion that Mississippi law reflects a policy preference for "high" UM coverage per se is a leap of logic not supported by MUMA or Mississippi caselaw.  To require the insurance carrier to provide UM coverage in an amount that dwarfs an insured's liability coverage is contrary to the

---

and holding that insurer cannot reduce, via workers' compensation offset, amount of UM coverage chosen by insured up to "that amount equal to the liability amount acquired").

clear language of the statute.  Miss. Code Ann. § 83-11-101.  To

provide every innocent insured <u>some</u> level of protection against

injury inflicted by uninsured motorists is the public policy goal

of MUMA.  <u>Rampy</u>, 278 So. 2d at 432.  The amount of UM coverage

required by law is keyed to the amount of liability insurance

purchased because the level of protection mandated is not the

highest conceivable level of protection but rather the amount of

protection that the insured would enjoy "if injured by a

financially responsible driver."  <u>Lawler</u>, 569 So. 2d at 1153

(citations omitted).  There is an inescapable logical symmetry

inherent in extending to an insured in the form of UM coverage

the same amount of protection that he has elected to acquire for

the protection of those who might be injured at his hands.  We

conclude that under Mississippi law the amount of UM coverage

extended to Mr. Hughes through the Avis rental agreement was the

statutory minimum amount of coverage allowed--$20,000 per

accident.

### B.   Motion to Amend

The decision to grant or deny a motion to amend is entrusted

to the sound discretion of the district court.  <u>Norman v. Apache

Corp.</u>, 19 F.3d 1017, 1021 (5th Cir. 1994); <u>Avatar Exploration,

Inc. v. Chevron, U.S.A., Inc.</u>, 933 F.2d 314, 320 (5th Cir. 1991).

This discretion, however, is limited by the Federal Rules of

Civil Procedure, which state that "leave shall be freely given

when justice so requires."  Fed. R. Civ. P. 15(a).  We have

stated that the district court's discretion does not permit

10

denial of a motion to amend unless there is a substantial reason to do so.  <u>Dussouy v. Gulf Coast Inv. Corp.</u>, 660 F.2d 594, 598 (Former 5th Cir. 1981).

Two reasons that we have recognized as valid in the past for the denial of a motion to amend are untimeliness and futility. <u>E.g.</u>, <u>Avatar Exploration</u>, 933 F.2d at 320-21.  In the instant case, the district court denied as moot the Claimants' motion to amend their complaint to allege that Mr. Hughes was not given an opportunity to purchase additional liability insurance.  The court found that even if the Claimants were granted leave to amend their complaint the outcome of the case would not change. We agree and therefore, under the circumstances of this case we conclude that it was not error for the district court to deny the Claimants motion to amend.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.